# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DAWON A. WORDLAW, individually and on behalf of all similarly situated individuals, | )<br>)<br>) |
| | ) No. 20-cv-03200 |
| *Plaintiff,* | )<br>) |
| v. | ) Hon. Manish S. Shah |
| | ) |
| ENTERPRISE LEASING COMPANY OF CHICAGO, LLC, a Delaware limited liability company; ENTERPRISE HOLDINGS, INC., a Missouri corporation, | )<br>)<br>)<br>)<br>)<br>) |
| *Defendants.* | ) |

## FIRST AMENDED CLASS ACTION COMPLAINT WITH JURY DEMAND

Plaintiff Dawon A. Wordlaw ("Plaintiff"), individually and on behalf of all similarly situated individuals, brings this First Amended Class Action Complaint against Defendants Enterprise Leasing Company of Chicago, LLC, and Enterprise Holdings, Inc. (collectively, "Enterprise" or "Defendants") for their violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), and to obtain redress for persons injured by their conduct. Plaintiff alleges the following based on personal knowledge as to Plaintiff's own experiences, and as to all other matters, upon information and belief, including an investigation conducted by Plaintiff's attorneys.

## INTRODUCTION

1. BIPA defines a "biometric identifier" as any personal feature that is unique to an individual, including handprints, fingerprints and palm scans. "Biometric information" is any information based on a biometric identifier, regardless of how it is converted or stored. 740 ILCS § 14/10. Collectively, biometric identifiers and biometric information are known as "biometrics."

1

2. This case concerns the misuse of individuals' biometrics by Defendants, providers of automobile rental services throughout Illinois. Using biometric enabled technology, Defendants are capturing, collecting, storing, disseminating, or otherwise using the biometrics of Plaintiff and other Class members, without their informed written consent as required by law, in order to track their time at work.

3. BIPA provides, *inter alia*, that private entities, such as Defendants, may not obtain and/or possess an individual's biometrics unless they first:

(1) inform the person whose biometrics are to be collected *in writing* that biometric identifiers or biometric information will be collected or stored;

(2) inform the person whose biometrics are to be collected *in writing* of the specific purpose and the length of term for which such biometric identifiers or biometric information is being collected, stored and used;

(3) receive a *written release* from the person whose biometrics are to be collected, allowing the capture and collection of their biometric identifiers or biometric information; and

(4) publish publicly available retention guidelines for permanently destroying biometric identifiers and biometric information. 740 ILCS 14/15(a).

4. Compliance with BIPA is straightforward and may be accomplished through a single, signed sheet of paper. BIPA's requirements bestow a right to privacy in biometrics and a right to make an *informed* decision when electing whether to provide or withhold biometrics.

5. Defendants use biometric timekeeping devices to track their employees' work hours. Defendants' system works by scanning their employees' biometric identifiers, such as their fingerprints, and subsequently using the same for authentication and timekeeping purposes. On

information and belief, the system includes the dissemination of biometrics to third parties, such as other Enterprise subsidiaries, data storage vendors, and payroll service providers.

6. The Illinois Legislature has found that "biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, even sensitive information like Social Security numbers can be changed. Biometrics, however, are biologically unique to each individual and, once compromised, such individual has no recourse, is at a heightened risk for identity theft, and is likely to withdraw from biometric facilitated transactions." 740 ILCS 14/5. The risk is compounded when a person's biometrics are also associated with their other personally identifiable information.

7. Plaintiff brings this action for statutory damages and other remedies as a result of Defendants' conduct in violating Plaintiff's biometric privacy rights.

8. On Plaintiff's own behalf, and on behalf of the proposed Class and Subclass defined below, Plaintiff seeks an injunction requiring Defendants to comply with BIPA, as well as an award of statutory damages to the Class and Subclass members, together with costs and reasonable attorneys' fees.

**PARTIES**

9. At all relevant times, Plaintiff Dawon A. Wordlaw has been a resident and a citizen of the state of Illinois.

10. Defendant Enterprise Holdings, Inc. is a corporation organized under the laws of the state of Missouri, with its principal place of business in St. Louis, Missouri, that conducts substantial business throughout Illinois, including within this District. Defendant Enterprise Holdings, Inc. is the corporate parent, and sole member, of Defendant Enterprise Leasing Company of Chicago, LLC. Defendant Enterprise Holdings, Inc.'s President and Chief Executive

Officer, Christine Taylor, Executive Chairman, Andrew Taylor, and Chief Financial Officer, Rick Short, are registered with the Illinois Secretary of State as the managers of Enterprise Leasing Company of Chicago, LLC.

11. Defendant Enterprise Leasing Company of Chicago, LLC is a limited liability company organized under the laws of the state of Delaware, with its principal place of business in Lombard, Illinois, that conducts substantial business throughout Illinois, and is registered with and authorized by the Illinois Secretary of State to transact business in Illinois, including under the assumed name "Enterprise Holdings." Defendant Enterprise Leasing Company of Chicago, LLC is a regional subsidiary of Defendant Enterprise Holdings, Inc.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.*, because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant; and none of the exceptions under subsection § 1332(d) apply.

13. This Court may assert personal jurisdiction over Defendants, because Defendants do business within Illinois and transact business in Illinois such that they have sufficient minimum contacts with Illinois and/or have purposely availed themselves of Illinois markets to make it reasonable for this Court to exercise jurisdiction over Defendants, and because Plaintiff's claims arise out of Defendants' unlawful in-state actions.

14. Venue is proper in this District because Plaintiff resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## GENERAL FACTUAL ALLEGATIONS

15. Defendants jointly operate automobile rental services in Illinois.

16. Defendant Enterprise Holdings, Inc. exercises substantial control over its regional subsidiaries', such as Defendant Enterprise Leasing Company of Chicago, LLC's, business practices and employee management practices, including with respect to employee privacy and data protection matters.

17. In fact, Defendant Enterprise Holdings, Inc. maintains a public Code of Conduct,[1] addressing employee management matters, which refers to its regional subsidiaries' employees as "our employees" and expressly governs its regional subsidiaries' employee management practices, referring to itself and its subsidiaries as a collective "Company": "The word 'Company,' where used in the Code, refers to Enterprise Holdings, Inc., Enterprise Fleet Management, Inc., and/or, in their individual capacities, each subsidiary company."

---

[1] A true and accurate copy of Defendants' shared, publicly-available Code of Conduct is attached hereto as Exhibit A.

5

# LETTER from our CHIEF EXECUTIVE OFFICER

**SINCE 1957, ENTERPRISE HOLDINGS' EMPLOYEES HAVE EXCEEDED CUSTOMERS' EXPECTATIONS BY BUILDING RELATIONSHIPS ONE HANDSHAKE AT A TIME AND ONE KEPT PROMISE AT A TIME.**

Our organization is only as strong as the reputation that each of us maintains in the minds of customers, business partners, vendors, and employees. That is why we have made holding ourselves to the highest standards of business ethics and conduct the personal responsibility of every employee. It is one of our founding values.

The principles articulated in this Code of Conduct shine through in our culture, and they will not change. We communicate these timeless principles to employees each year because they remain fundamental to everything we say and do. We strive to demonstrate these principles every day. That may not always be easy, but you should understand that no financial objective outweighs our commitment to ethics, integrity, and compliance with applicable law. If you find yourself in a difficult situation where the right choice isn't clear, ask your supervisor for guidance. You can also speak to another resource listed in this Code, or call the Ethics Hotline. You will never experience retaliation for asking a question or reporting a concern.

The commitment, integrity, and hard work of all employees have made Enterprise Holdings the No. 1 total transportation provider in the world. Our values of respect, dignity, and customer service have fueled our success—and those values provide the foundation we will build upon for years to come.



*Chrissy Taylor*

**CHRISSY TAYLOR**
PRESIDENT AND CHIEF EXECUTIVE OFFICER

Enterprise Holdings, Inc., owns a network of regional subsidiaries in the United States which operate the Enterprise Rent-A-Car, National Car Rental and Alamo Rent A Car brands, as well as Enterprise Car Sales, and Enterprise Car and Ride Sharing. In the rest of the world, Enterprise Holdings, Inc., owns international subsidiaries that similarly operate a portfolio of car rental brands through an integrated global network of regional subsidiaries and franchises. Additionally, Enterprise Holdings, Inc.'s affiliate, Enterprise Fleet Management, Inc., operates a fleet management and leasing business in the United States and its subsidiary similarly operates this business in Canada. This Code of Conduct (Code), and the policies and principles underlying it, have been adopted by Enterprise Holdings, Inc., Enterprise Fleet Management, Inc., and, individually, by management of each subsidiary company. The word "Company," where used in the Code, refers to Enterprise Holdings, Inc., Enterprise Fleet Management, Inc., and/or, in their individual capacities, each subsidiary company.

18. The Code of Conduct expressly applies to all those within "the Company," including, by definition, employees of Defendant Enterprise Holdings, Inc.'s regional subsidiaries:

> **WHO SHOULD FOLLOW THE CODE?**
>
> The Code applies to all of us regardless of our position within the Company. All of us are expected to follow the principles outlined in the Code and Company policies, to act with integrity in all business transactions, and to treat each other with respect at all times. Doing what is right is a personal responsibility and must always be an integral part of the Company's mission. Additionally, we expect that Company suppliers, business partners, consultants, and licensees and franchisees will follow similar principles. Our Supplier Code of Conduct and Franchisee Code of Conduct explain more about this expectation.

19. With respect to employee privacy, the Code of Conduct states that Enterprise Holdings, Inc. and its subsidiaries protect sensitive information, including employees' personal information, "by limiting access to those who have a business need to know it, securing the systems that transmit or store it, and *ensuring our use of the information complies with privacy laws*":

> To protect our brand and maintain our competitive advantage in the marketplace, we also have a duty to protect the Company's intangible assets: confidential information and intellectual property. This includes customer and employee personal information, trade secrets, financial information, computer files, vehicle telematics data, customer lists, and marketing plans. We protect this information, in part, by limiting access to those who have a business need to know it, securing the systems that transmit or store it, and ensuring our use of the information complies with privacy laws. This means, in part, that we properly collect and use personal information in accordance with our Privacy Principles, Global Privacy Policy, and Personnel Policies Summary. As a rule, we take every precaution necessary to avoid the improper release of proprietary or confidential information. For more information, refer to the Data Classification Policy.

20. The Code of Conduct also provides that Enterprise Holdings, Inc. and its subsidiaries are "committed to protecting the privacy of its employees' private information":

> **WE RESPECT EMPLOYEE PRIVACY**
>
> The Company is committed to protecting the privacy of its employees' private information, including their protected health information. We will act in compliance with all applicable laws regarding the accessing, receipt, use, or disclosure of employee health or medical information.
>
> For more information, please refer to the Personnel Policies Summary.

21. As is evident from the Code of Conduct, Defendant Enterprise Holdings, Inc. and its regional subsidiaries, including Defendant Enterprise Leasing Company of Chicago, LLC,

8

subscribe to common policies, implemented by Enterprise Holdings, Inc., covering various areas of employee management, and do not observe corporate formalities with respect to employee management. Defendant Enterprise Holdings, Inc. speaks for its regional subsidiaries when it comes to managing employee privacy, and has publicly stated both its intention and its regional subsidiaries' intentions to comply with all privacy laws.

22. Thus, on information and belief, at all relevant times Defendant Enterprise Holdings, Inc. has exercised primary, if not exclusive, control over its subsidiaries', including Defendant Enterprise Leasing Company of Chicago, LLC's, practices with respect to employee privacy matters and other employment conditions.

23. As is evident from its Code of Conduct, Defendant Enterprise Holdings, Inc. had the exclusive final say as to whether its regional subsidiaries would comply with all privacy laws, including BIPA.

24. As is evident from its Code of Conduct, which does not differentiate between itself and its regional subsidiaries, Defendant Enterprise Holdings, Inc. has engaged in an undertaking to ensure legally-compliant and sufficient working conditions, which includes ensuring workers within its facilities are not subject to illegal working conditions, such as non-compliant biometric timekeeping systems and conduct by its subsidiaries that jeopardizes health, safety, or personal data.

**FACTS SPECIFIC TO PLAINTIFF**

25. In 2016, while Plaintiff was working for Defendants at an Enterprise facility in Cook County, Illinois, Defendants implemented biometric scanning and time-tracking devices and technology to monitor and manage their workers', including Plaintiff's, work hours.

26. While Plaintiff received her paychecks from Defendant Enterprise Leasing Company of Chicago, LLC, the conditions of her work environment, including matters pertaining to employee timekeeping, employee privacy, employee discipline, and the scope of acceptable employee behavior, were controlled by Defendant Enterprise Holdings, Inc.

27. Until Plaintiff left Defendants' employ in March 2019, Plaintiff was required to scan her biometric identifiers, in the form of her fingerprints, each time Plaintiff clocked in and clocked out of a shift at work.

28. Plaintiff relied on Defendants to not only provide a lawful and legally compliant biometric timekeeping system, but to also disclose all material information regarding the technology and system, including all relevant retention, destruction, and dissemination policies.

29. Prior to taking Plaintiff's biometrics, Defendants did not inform Plaintiff in writing that her biometrics were being collected, stored, used, or disseminated, or provide her with any disclosures relating to their collection, storage, or dissemination of her biometrics.

30. Defendants did not seek, and Plaintiff never provided, any written consent relating to the collection, use, storage, or dissemination of Plaintiff's biometrics.

31. Prior to taking Plaintiff's biometrics, Defendants did not make publicly available any written policy as to a biometric retention schedule, nor did Defendants disclose any guidelines for permanently destroying her collected biometrics.

32. Additionally, Defendants did not obtain consent from Plaintiff to disseminate Plaintiff's biometrics to third parties, including any data storage or payroll processing vendors.

### CLASS ALLEGATIONS

33. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this action individually and on behalf of a Class and Subclass defined as follows:

> Class: All individuals whose biometrics were captured, collected, stored, used, transmitted, or disseminated by or on behalf of Defendant Enterprise Holdings, Inc. within the state of Illinois at any time within the applicable limitations period.
>
> Subclass: All individuals whose biometrics were captured, collected, stored, used, transmitted, or disseminated by or on behalf of Defendant Enterprise Leasing Company of Chicago, LLC within the state of Illinois at any time within the applicable limitations period.

34. Excluded from the Class and Subclass are any members of the judiciary assigned to preside over this matter; any officer or director of Defendants; and any immediate family member of such officers or directors.

35. Upon information and belief, there are at least hundreds of members of the Class, making the Class members so numerous that joinder of all members is impracticable. Although the exact number of Class members is currently unknown to Plaintiff, the members can be easily identified through Defendants' personnel records.

36. Plaintiff's claims are typical of the claims of the Class members Plaintiff seeks to represent, because the factual and legal bases of Defendants' liability to Plaintiff and the other members are the same, and because Defendants' conduct has resulted in similar injuries to Plaintiff and to the Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendants' BIPA violations.

37. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not limited to, the following:

    a. Whether Defendants' conduct is subject to BIPA;

    b. Whether Defendants made available to the public a written policy that establishes a retention schedule and guidelines for destroying biometrics;

c. Whether Defendants obtained a written release from the Class before capturing, collecting, or otherwise obtaining their biometrics;

d. Whether Defendants provided a written disclosure that explains the specific purposes, and the length of time, for which biometrics were being collected, stored and used before taking such biometrics;

e. Whether Defendants' conduct violates BIPA;

f. Whether Defendants' violations of the BIPA are willful or reckless; and

g. Whether Plaintiff and the Class are entitled to damages and injunctive relief.

38. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency of adjudication.

39. Plaintiff will adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class.

40. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## COUNT I
### Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*
### (On behalf of Plaintiff and the Class and Subclass)

41. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42. Defendants are each a private entity under BIPA.

43. BIPA requires private entities, such as Defendants, to obtain informed written consent from individuals before acquiring their biometric information. Specifically, BIPA makes it unlawful to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

44. BIPA also requires that private entities in possession of biometric identifiers and/or biometric information establish and maintain a publicly available biometric retention and destruction policy.

45. Plaintiff and the other Class and Subclass members have had their "biometric identifiers," namely their fingerprints, collected, captured, or otherwise obtained by Defendants in order to track their work hours. Plaintiff and the other Class and Subclass members' biometric identifiers were also used to identify them, and therefore constitute "biometric information" as defined by BIPA. 740 ILCS 14/10.

46. Each instance Plaintiff and the other Class and Subclass members were required to scan their fingerprints, Defendants captured, collected, stored, and/or used Plaintiff's and the other

Class and Subclass members' biometric identifiers or biometric information without valid consent and without complying with and, thus, in violation of BIPA.

47. Defendants' practice with respect to capturing, collecting, storing, and using biometrics fails to comply with applicable BIPA requirements:

   a. Defendants failed to inform Plaintiff and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

   b. Defendants failed to inform Plaintiff and the Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

   c. Defendants failed to inform Plaintiff and the Class in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

   d. Defendants failed to obtain a written release, as required by 740 ILCS 14/15(b)(3);

   e. Defendants failed to provide a publicly available retention schedule detailing the length of time for which the biometrics are stored and/or guidelines for permanently destroying the biometrics they store, as required by 740 ILCS 14/15(a); and

   f. Defendants failed to obtain informed consent to disclose or disseminate the Class' biometrics to third parties, as required by 740 ILCS 14/15(d)(1).

48. By capturing, collecting, storing, and using Plaintiff's and the Class' biometrics as described herein, Defendants denied Plaintiff and the Class their right to statutorily required

information and violated their respective rights to biometric information privacy, as set forth in BIPA.

49. BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively, damages of $1,000 for each negligent violation of BIPA. 740 ILCS 14/20(1)-(2).

50. Defendants knew, or were reckless in not knowing, that the biometric timekeeping systems used would be subject to the provisions of BIPA, a law in effect since 2008, yet wholly failed to comply with the statute. As is evident from Defendants' Code of Conduct, Defendants represent that they strive to stay abreast of and comply with applicable privacy laws, but failed to do so with respect to BIPA:



51. Alternatively, Defendants negligently failed to comply with BIPA.

52. Accordingly, with respect to Count I, Plaintiff, individually and on behalf of the proposed Class, prays for the relief set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class and Subclass, respectfully requests that this Court enter an Order:

a. Certifying the Class and Subclass as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b. Declaring that Defendants' actions, as set forth herein, violate BIPA;

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with BIPA;

d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2);

e. Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(1);

f. Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3);

g. Awarding pre- and post-judgment interest, as allowable by law; and

h. Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: September 21, 2020

Respectfully submitted,

DAWON A. WORDLAW, individually and on behalf of all similarly situated individuals

By: /s/ Timothy P. Kingsbury
*One of Plaintiff's Attorneys*

Timothy P. Kingsbury
Andrew T. Heldut
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
tkingsbury@mcgpc.com
aheldut@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*