## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DAWON A. WORDLAW, on behalf of herself and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>ENTERPRISE LEASING COMPANY OF CHICAGO, LLC; ENTERPRISE HOLDINGS, INC.,<br><br>        Defendants. | Case No. 20-cv-03200<br><br>Hon. Manish S. Shah<br><br>Hon. Magistrate Gabriel A. Fuentes |

## DEFENDANTS ENTERPRISE LEASING COMPANY OF CHICAGO, LLC AND ENTERPRISE HOLDINGS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

THE COURT'S ORDER ................................................................................................ 2

LEGAL STANDARD...................................................................................................... 4

RECONSIDERATION IS APPROPRIATE AND NECESSARY................................. 5

I.     PLAINTIFF'S COMPLAINT ENGAGES IN IMPROPER GROUP PLEADING
       IN ACCORDANCE WITH SEVENTH CIRCUIT LAW ................................. 5

II.    THE COMPLAINT DOES NOT PLAUSIBLY ALLEGES ENTERPRISE
       HOLDINGS "DIRECTLY" VIOLATED BIPA ............................................. 6

       A.     "Control" Of "Work Environment" Is Not The Relevant Inquiry ......... 6

       B.     Plaintiff's Two Sole Conclusory Allegations Regarding Her Work
              Environment Are Not Entitled To Deference ......................................... 7

       C.     Plaintiff's Two Sole Conclusory Allegations Regarding Her Work
              Environment Are Directly Contradicted By The Court's Rejection Of
              Enterprise Holdings' Code Of Conduct.................................................. 9

III.   PLAINTIFF'S "ALTERNATIVE THEORIES" OF LIABILITY ARE
       UNSUPPORTED BY THE LAW AND FACTS ............................................. 11

       A.     Direct-Participant Liability .................................................................. 11

       B.     Joint-Employer................................................................................... 13

CONCLUSION.............................................................................................................. 15

67578909v.7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aiello v. Invision Mktg. Sols.*,
No. 17 C 985, 2019 WL 1875354 (N.D. Ill. Apr. 26, 2019)...................................................15

*Aiello v. S. Wine & Spirits of Am., Inc.*,
2019 WL 6210938 (N.D. Ill. Nov. 21, 2019) ........................................................................15

*Andrews v. Kowa Printing Corp.*,
217 Ill. 2d 101 (Ill. 2005)......................................................................................................14

*Bancorpsouth, Inc., v. Fed. Ins. Co.*,
873 F.3d 582 (7th Cir. 2017) ................................................................................................10

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ..................................................................................................5

*Boyce v. SSP Am. MDW, LLC*,
2019 WL 3554153 (N.D. Ill. July 31, 2019)...................................................................8, 15

*Brunner v. Liautaud*,
2015 WL 1598106 (N.D. Ill. Apr. 8, 2015) .....................................................................8, 15

*Dugan v. Sears, Roebuck & Co.*,
113 Ill. App. 3d 740, 447 N.E.2d 1055, *on reh'g sub nom. by Dugan v. Sears,
Roebuck & Co.*, 113 Ill. App. 3d 740, 454 N.E.2d 64 (1983) .................................13

*In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*,
683 F.3d 462 (3d Cir. 2012)...............................................................................................9, 14

*Forsythe v. Clark USA, Inc.*,
224 Ill. 2d 274 (Ill. 2007).....................................................................................................12

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) (Pallmeyer, J.).........................................................6, 7

*Holmes v. United Airlines, Inc.*,
No. 10 C 8085, 2012 WL 245136 (N.D. Ill. Jan. 25, 2012) ..................................................12

*Ivery v. RMH Franchise Corp.*,
280 F. Supp. 3d 1121 (N.D. Ill. 2017) ................................................................8, 9, 14, 15

*Kemper v. Deutsche Bank AG*,
911 F.3d 383 (7th Cir. 2018) ................................................................................................13

67578909v.7

*Limestone Dev. Corp. v. Vill. of Lemont, Ill.*,
    520 F.3d 797 (7th Cir. 2008) ..................................................................................... 5

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) .................................................................................... 8

*Miller v. Safeco Ins. Co. of Am.*,
    683 F.3d 805 (7th Cir. 2012) .................................................................................... 4

*Namuwonge v. Kronos, Inc.*,
    418 F. Supp. 3d 279 (N.D. Ill. 2019) ....................................................................... 7

*Payton v. Cnty of Kane*,
    308 F.3d 673 (7th Cir. 2002) .................................................................................... 5

*Peirick v. Ind. Univ.–Purdue Univ. Indianapolis Athletics Dep't*,
    510 F.3d 681 (7th Cir. 2007) .................................................................................... 4

*Richardson v. Help at Home, LLC*,
    2017 WL 2080448 (N.D. Ill. May 15, 2017) (Shah, J.)........................................... 15

*Rowe v. State Bank of Lombard*,
    125 Ill. 2d 203 (Ill. 1988) ...................................................................................... 13

*Santora v. Starwood Hotel & Resorts Worldwide, Inc.*,
    2007 WL 3037098 (N.D. Ill. Oct. 16, 2007).......................................................... 13

*Scheneider v. Cornerstone Pints, Inc.*,
    148 F. Supp. 3d 690 (N.D. Ill. 2015) ..................................................................... 14

*Scottsdale Ins. Co. v. Subscription Plus, Inc.*,
    299 F.3d 618 (2002)............................................................................................... 13

*Shah v. Littelfuse Inc.*,
    2013 WL 1828926 (N.D. Ill. Apr. 29, 2013) .............................................. 8, 14, 15

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) .................................................................................... 6

*United States v. Ligas*,
    549 F.3d 497 (7th Cir. 2008) .............................................................................. 4, 12

*Vill. of Winfield v. Ill. State Labor Relations Bd.*,
    678 N.E.2d 1041 (Ill. 1997).............................................................................. 14, 15

*Zurich Capital Mkts. Inc. v. Coglianese*,
    383 F. Supp. 2d 1041 (N.D. Ill. 2005) ..................................................................... 4

iii

**Statutes**

740 ILCS 14/15 ........................................................................................................6, 13

28 U.S.C. § 1292(b) ........................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 54(b) ........................................................................................................4

Restatement (Third) of Torts ........................................................................................13

Rule 8 ........................................................................................................................8

Rule 11 ........................................................................................................1, 5, 9

67578909v.7

**INTRODUCTION**

Reconsideration of the Court's December 21, 2020 Memorandum Opinion and Order ("Order," ECF No. 30) is respectfully necessary here for several reasons—particularly in light of the Court's holding, *in dicta*, as to the viability Plaintiff's "alternative theories" of liability under BIPA vis-à-vis Enterprise Holdings, a holding company which was *never* Plaintiff's employer, and had no role in the timekeeping system.

The Court respectfully: (1) misapplied the law for so-called "direct liability"; (2) incorrectly credited Plaintiff's allegations that Enterprise Holdings "controlled" Plaintiff's work-environment, which are neither specific, nor factual, but rather legal conclusions based solely on allegations regarding Enterprise Holdings' Code of Conduct ("Code")—which represented the *entire factual basis* for Plaintiff's inclusion of Enterprise Holdings as a Defendant;[1] (3) misapplied the law for Plaintiff's alternative theories of liability, i.e., direct participant and joint-employer; and (4) did not apply the factors necessary to sustain a claim under those theories, which have no factual basis in the Complaint.

The Order's central holdings also undermine one another. In holding that the Complaint plausibly alleges Enterprise Holdings directly violated BIPA, the Court relied on Plaintiff's counsel's certification under Rule 11 that sufficient evidence exists to claim that both Defendants collected Plaintiff's biometric information. (*Id.* at 8). Yet, the Court only considered Plaintiff's alternative theories of liability because "[P]laintiff acknowledged that discovery may later reveal that Enterprise Holdings did not directly collect, retain, and disclose biometric data." (*Id*. at 12). Thus, the Court held on the one hand that it must trust Plaintiff's Rule 11 certification that the

---

[1] To be sure, Plaintiff's amended complaint solely added allegations relating to the Code in an attenuated attempt to state a claim against Enterprise Holdings, after Plaintiff was confronted with Defendant's original motion to dismiss and a Rule 11 letter at the outset of the litigation indicating that Enterprise Holdings was an improper Defendant. Despite the Court's complete rejection of the Code, Plaintiff's claim perplexingly survived.

allegations in the Complaint are not frivolous, but on the other hand, unnecessarily considered these theories of liability because Plaintiff may have run afoul of Rule 11. (*Id.* at 8).[2]

More importantly, the Court's unnecessary holding, *in dicta,* regarding Plaintiff's alternative theories may have wide-reaching ramifications for Illinois companies already subjected to countless BIPA class actions, absent any actual damage. Specifically, the Court's holding may subject corporate entities who had *nothing* to do whatsoever with the collection, capture, or possession of information—the operative actions in BIPA—to costly litigation, discovery, and significant statutory damages, regarding a subsidiaries' timekeeping system for their *own* employees. Such a result has no basis in the statutory text and ignores the black-letter principles of corporate structure. More so, the Court's holding leaves the door open to proceed on such a claim where, like here, Plaintiff has not alleged any *specific*, *factual* support that the entity: (1) ever employed her; (2) had any role in the timekeeping system; or (3) actively collected or captured her information.

Rather an individual, like Plaintiff, may proceed on a claim against such an entity based on nothing more than factually unsupported, conclusory allegations of "control" of "work environment"—words which are repeated frequently in the Order as the crucial inquiry under BIPA—despite not appearing a single time in the BIPA's text. Accordingly, the Court should reconsider and reverse its Order.[3]

## THE COURT'S ORDER

For relevant purposes of this Motion, the Court's Order held the following: *First*, there was "no impermissible group pleading" where Plaintiff "plans to prove that both defendants

---

[2] This is particularly concerning because the Court reached this conclusion despite acknowledging that Plaintiff "is currently unable to allege which [Defendant] in particular installed the timekeeping system." (*Id.* at 8).

[3] In the alternative, Defendants respectfully submit that the Court should certify the questions presented contained in Defendants' Motion To Certify Questions For Appeal, filed concurrently herewith.

violated BIPA, even though she is currently unable to allege which one in particular installed and controlled the timekeeping system." The Court reached this conclusion despite acknowledging that "the Complaint does not distinguish between the two defendants." (Order at 3, 7-8).

*Second*, the Complaint plausibly alleged that Enterprise Holdings "*directly* collected, possessed, and disseminated her fingerprints" noting that the "overarching inquiry" is "whether Enterprise Holdings was sufficiently involved in the Cook County facility's fingerprint-timekeeping system." (*Id.* at 10-11) (emphasis added). In reaching this conclusion, the Court rejected Plaintiff's "heavy reliance" on the Code as "misguided," "largely a distraction," and concluded that it: (1) "does not suggest that Enterprise Holdings controls each individual subsidiary, nor does it plausibly show that Enterprise Holdings was responsible for the timekeeping system" and; (2) does not plausibly support that "Enterprise Holdings directed and managed the biometric timekeeping system." (*Id.* at 11-12, 14).

Despite this, the Court found that "[Plaintiff's] actual allegations about her work environment" were plausible and sufficient allegations. (*Id.* at 12.) Specifically, the Court credited the allegations that Enterprise Holdings "'exercised primary, if not exclusive, control over' Enterprise Chicago's practices 'with respect to employee privacy matters and other employment conditions'" and that "'her work environment, including . . . employee timekeeping, employee privacy, employee discipline, and the scope of acceptable behavior were controlled' by Enterprise Holdings." (*Id.* at 12) (quoting Compl. ¶¶ 22, 26)). The Court concluded that "these are specific factual statements that, at this stage, must be accepted as true." (*Id.* at 12). The Court held that "if Enterprise Holdings controlled employee timekeeping and privacy matters…then it's plausible that Enterprise Holdings administrated the timekeeping system and unlawfully collected her fingerprint scans." (*Id.* at 12-13).

*Third*, the Court noted, *in dicta*, that Plaintiff would not be precluded from pursuing a claim against Enterprise Holdings on direct-participant or joint-employer theories because Plaintiff "has alleged that Enterprise Holdings significantly controlled her work environment in several important ways." (Order at 13-14).[4] The Court indicated that it only reached this issue "because plaintiff acknowledges that discovery may reveal that Enterprise Holdings did not directly collect, retain, and disclose biometric data." (*Id.* at 13). Further, this holding was made only after the Court rejected Plaintiff's reliance on the Code. (*See id.* at 14). The Court concluded Plaintiff "will have to rely on other evidence specifically showing that Enterprise Holdings authorized or directed the timekeeping policy, or that it was so involved with the day-to-day that it was a joint-employer." (*Id.* at 14).

## LEGAL STANDARD

Courts have broad authority to reconsider interlocutory orders. *See Peirick v. Ind. Univ.–Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 694 n. 5 (7th Cir. 2007). Interlocutory orders "are 'subject to revision at any time before the entry of judgment adjudicating all the claims.'" *Zurich Capital Mkts. Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) (quoting Fed. R. Civ. P. 54(b)). "A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). A

---

[4] The Court also indicated, *in dicta*, that the text of BIPA "does not close the door on traditional theories of agency liability" or "vicarious liability." *Id.* at 13 n. 2. However, the Court is mistaken that these issues were ever raised or briefed by the Parties. Plaintiff's Response only raised direct-participant and joint-employer alternative theories. Accordingly, the Court erred in reaching the issue of whether "traditional theories of agency,"(in general and as opposed to the specific issues briefed by the Parties) could apply to BIPA, as "an issue not properly before it," *Ligas*, 549 F.3d at 501. Further, the Court did not analyze these theories in the context of the Complaint. Accordingly, this Motion does not address this holding. However, Defendants would also respectfully submit that such theories also have no basis in BIPA, nor are there any allegations in the Complaint supporting such theories.

motion to reconsider "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012).

## RECONSIDERATION IS APPROPRIATE AND NECESSARY

### I.    PLAINTIFF'S COMPLAINT ENGAGES IN IMPROPER GROUP PLEADING IN ACCORDANCE WITH SEVENTH CIRCUIT LAW

Seventh Circuit law is clear that a "defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 802–03 (7th Cir. 2008). "[T]o bring a valid case, a plaintiff must allege that a defendant—***the very defendant sued***—has somehow wronged her in a legally cognizable way." *Payton v. Cnty of Kane*, 308 F.3d 673, 678 (7th Cir. 2002) (emphasis added). The Order cited *Bank of Am., N.A. v. Knight*, 725 F.3d 815 (7th Cir. 2013), as grounds to hold that the Complaint does not engage in improper group pleading. However, *Knight* affirmed dismissal with prejudice under almost identical circumstances here. The Seventh Circuit held:

> A contention that "the defendants looted the corporation"—without any details about who did what—is inadequate. Liability is personal. An allegation that someone looted a corporation does not propound a plausible contention that a particular person did anything wrong. ***The Rules of Civil Procedure set up a system of notice pleading. Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed.***

*Id.* at 818 (emphasis added). The Order notes that "the complaint does not distinguish between the two defendants in its central allegations." (Order at 3). Thus, *Knight* mandates dismissal.

To be clear, this is not a matter of pleading facts in the alternative. Here, Plaintiff has pled ***zero*** facts that would plausibly state a claim, "direct" or otherwise. The Complaint also offers no specific, factual allegations that could plausibly suggest that Enterprise Holdings had any "control" over her "work environment," from which the Court could plausibly conclude that Enterprise Holdings directly and actively collected or captured her information. *See infra*. Nor

could she within the confines of Rule 11 where: (1) Plaintiff was a bus driver at a location operated by Enterprise Leasing and was never employed by Enterprise Holdings; (2) alleges that Enterprise Leasing signed her paychecks, (*see* Compl. ¶ 26); and (3) Plaintiff admitted, and the Court acknowledged, that Plaintiff is unaware of who allegedly collected her biometric information. *See infra* § II(A)-(C) & III(B). This a far-cry from "'a story that holds together.'" (Order at 10) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)).

## II. THE COMPLAINT DOES NOT PLAUSIBLY ALLEGES ENTERPRISE HOLDINGS "DIRECTLY" VIOLATED BIPA

*First*, the Court misapplied the standard for direct liability under BIPA, by applying a "control" inquiry, in contravention of the plain language of BIPA. Even accepting Plaintiff's conclusory allegations as true, they do not, without more, lead to the plausible conclusion that Enterprise Holdings actively collected, captured, or possessed Plaintiff's information. *Second*, the allegations of the Complaint upon which the Court based its holding, *i.e.*, that Enterprise Holdings "controlled her work environment" are not allegations of specific fact, but rather legal conclusions that should have been afforded no weight by the Court. *Third*, the Court's acceptance of these allegations directly contradicts the Court's rejection of the Code.

### A. "Control" Of "Work Environment" Is Not The Relevant Inquiry

The Court noted that the "overarching inquiry" as to whether Enterprise Holdings "directly collected, possessed, and disseminated her fingerprints" is whether it "was sufficiently involved in the Cook County facility's fingerprint-timekeeping system" and "controlled employee timekeeping and privacy matters at the Cook County location." (Order at 11). These are not the correct inquiries.

As discussed in Defendants' Motion and Reply, BIPA's regulations apply only to entities that *actively* collect, capture, purchase, receive through trade, or otherwise obtain biometric data or possess biometric data. *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 965-66

(N.D. Ill. 2020) (Pallmeyer, J.) ("The court concludes that for Section 15(b)'s requirements to apply, an entity must, at a minimum, take ***an active step*** to 'collect, capture, purchase, receive through trade, or otherwise obtain' biometric data.") (emphasis added); *see also Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (same).[5]

The question of whether the Complaint plausibly alleges that Enterprise Holdings, directly and actively, collected, captured, or possessed Plaintiff's information is a separate question from the alternative theories argued by Plaintiff. Indeed, the Court acknowledged that these inquiries are separate, but nonetheless disregarded this distinction in its analysis of direct liability under BIPA. (*See* Order at 11-13). Here, Plaintiff has not alleged *any* facts plausibly suggesting Enterprise Holdings actively collected, captured, or possessed Plaintiff's information.

Rather, the Court based its holding solely on mere allegations regarding Enterprise Holdings purported "control" of Plaintiff's "work environment." (Order at 12) (citing Compl. ¶¶ 22, 26)). Plaintiff's allegations say nothing as to whether Enterprise Holdings ever collected, captured, or possessed Plaintiff's information, much less that it "actively" did so. *See Heard*, 440 F. Supp. 3d at 966. As acknowledged by the Court in reaching its conclusion, these allegations would only suggest, at most, that "Enterprise Holdings directed and managed the biometric timekeeping at the Cook County facility." (*See* Order at 12). However, this is not the standard. Indeed, BIPA does not include the words "control," "direct," or "manage" whatsoever.

## B. Plaintiff's Two Sole Conclusory Allegations Regarding Her Work Environment Are Not Entitled To Deference

The Court relied solely on two allegations in Plaintiff's Complaint, finding that the following were "specific factual statements that, at this stage, must be accepted as true" and that these allegations, ***alone***, were sufficient:

---

[5] The Court's Order did not address Defendants' argument in this regard, or the authority cited in support.

22. Thus, on information and belief, at all relevant times Defendant Enterprise Holdings, Inc. has exercised primary, if not exclusive, control over its subsidiaries', including Defendant Enterprise Leasing Company of Chicago, LLC's, practices with respect to employee privacy matters and other employment conditions.
\***
26. While Plaintiff received her paychecks from Defendant Enterprise Leasing Company of Chicago, LLC, the conditions of her work environment, including matters pertaining to employee timekeeping, employee privacy, employee discipline, and the scope of acceptable employee behavior, were controlled by Defendant Enterprise Holdings, Inc.

(Order at 12) (citing Compl. ¶¶ 22, 26)).

These allegations are not specific facts, but rather legal conclusions. The Seventh Circuit is clear that courts should only "accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).[6]

Moreover, Plaintiff's allegations of "control" are not the kinds of specific fact allegations that satisfy Rule 8. For example, in *Ivery v. RMH Franchise Corp.*, the court explained that specific facts must be alleged to demonstrate "control":

 [T]he amended complaint includes no allegations that RMH Franchise . . . had any authority to direct RMH Illinois to enter into such arrangements or to control the activities of RMH Illinois employees. It does not allege that RMH Franchise hired Ivery or had the authority to fire her. There are no allegations that RMH Franchise set Ivery's work schedule, directly supervised her day-to-day work as an AM, or issued her payroll checks. ***These are the types of allegations that allow courts to draw reasonable inferences that an entity "controls" working conditions***.

280 F. Supp. 3d 1121, 1131 (N.D. Ill. 2017) (emphasis added). In other words, "control" is a legal conclusion which must be supported by ***specific*** and ***factual*** allegations regarding the level of involvement over aspects of the work environment. *Id.*[7] Here, the Complaint offers no

---

[6] *See also Shah v. Littelfuse Inc.*, 2013 WL 1828926, at *3 (N.D. Ill. Apr. 29, 2013) ("[T]he Court will 'excise[ ] [legal conclusions and conclusory allegations] not entitled to the presumption' and then determine 'whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'") (citations omitted).

[7] Courts in this District unanimously support this proposition. *See, e.g., Brunner v. Liautaud*, 2015 WL 1598106, at *4 (N.D. Ill. Apr. 8, 2015) (dismissing complaint and noting that "[t]he Plaintiffs have seemingly exhausted every synonym for the term 'control' when alleging [defendant's] influence over Jimmy John's Sandwich Shop franchisees. ***However, the Plaintiffs have not specifically pled distinct facts that firmly establish [defendant's] control over employees' work schedules***.") (emphasis added)); *Boyce v. SSP Am. MDW, LLC*, 2019 WL 3554153, at *4 (N.D. Ill. July 31, 2019) ("To establish that SSP was his employer, Boyce ***must allege facts showing that SSP specifically exercised control over his working conditions***—for example, that SSP had the power

specific, factual allegations that Enterprise Holdings had any "control" over her "work environment," from which the Court could plausibly conclude that Enterprise Holdings actively collected or captured her information.  Importantly, the Complaint fails to allege *any* of Plaintiff's specific interactions with Enterprise Holdings *whatsoever* to support her conclusory allegations that Enterprise Holdings' "control" extended to "employee timekeeping, employee privacy, employee discipline, and the scope of employee behavior." *Id.*[8]  The Order notably does not point to any such allegations, nor could it, because they do not exist.

Indeed, Plaintiff's Response to Defendants' Motion disclaims knowledge of any specific facts supporting these conclusions.  (*See* ECF No. 28 at 6) (stating that Plaintiff lacks knowledge of Enterprise Holdings' participation in timekeeping practices).  This was accepted by the Court in permitting Plaintiff's claim to proceed despite these contradictions and lack of factual support.  (Order at 8).  Accordingly, the two allegations that the Court held plausibly stated a claim against Enterprise Holdings cannot serve as the sole basis for stating a claim.

> **C.** **Plaintiff's Two Sole Conclusory Allegations Regarding Her Work Environment Are Directly Contradicted By The Court's Rejection Of Enterprise Holdings' Code Of Conduct**

Plaintiff's reliance on the Code was summarily rejected by the Court.  Specifically, the Court held that Plaintiff's reliance on the Code was  "misguided," "largely a distraction," "does

---

to hire and fire him, that SSP supervised and controlled his work schedule and conditions of employment, that SSP determined how he was paid, and that SSP maintained employment records.") (emphasis added)).

[8] To be sure, if Plaintiff is so confident within the confines of Rule 11 to allege in definitive fashion that Enterprise Holdings "controlled her work environment," surely she would be able to, and must, provide specific examples of how it controlled "employee timekeeping, employee privacy, employee discipline, and the scope of acceptable employee behavior," such as any interactions whatsoever with Enterprise Holdings, specifics of Enterprise Holdings hiring, firing, or disciplining Enterprise Leasing employees, interactions with Enterprise Holdings regarding timekeeping, etc.  (Compl. ¶ 26).  She has not done so because she cannot.  To that end, Defendants would again direct the Court to the Third Circuit's decision in *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 683 F.3d 462, 471 (3d Cir. 2012) not for the proposition that it is binding upon Plaintiff in this case, as the Court misinterpreted Defendants' argument in its Order, but rather for the proposition for which it was originally cited—i.e., that none of Plaintiff's legal conclusions are *plausible*, including that Enterprise Holdings has any authority over subsidiary employees to "hire or fire," "set compensation, benefits, schedules or rates or methods of payment," is "not involved in employee supervision or employee discipline," nor does it "***exercise or maintain any control over employee records***." *Id.* at 471 (emphasis added).

not suggest that Enterprise Holdings controls each individual subsidiary, nor does it plausibly show that Enterprise Holdings was responsible for the timekeeping system." (*Id.* at 11-14). The Court's rejection of the Code, and the inferences Plaintiff attempts to draw from it, is inconsistent with the Court's deference to Plaintiff's alleged "specific factual statements" about her "personal experience." (*Id.* at 11-12). A plain reading of the Complaint makes clear that Plaintiff's "personal experience[s]" are mere legal conclusions based upon the Code.

*First*, the Court should not have relied on Paragraph 22 of the Complaint as distinct from the Complaint's allegations regarding the Code. (*Id.* at 12). Paragraph 22 is bracketed by paragraphs explicitly referencing the Code.[9] Indeed, Paragraph 22 begins with the word "thus," indicating that it is drawing a conclusion from the paragraphs that precede it, as opposed to making an independent factual statement about Plaintiff's work environment. (Compl. ¶ 22). As noted by the Seventh Circuit, courts may not "uncouple allegations, read them in isolation, and disregard their context." *Bancorpsouth, Inc., v. Fed. Ins. Co.*, 873 F.3d 582, 587 (7th Cir. 2017). Further, Paragraph 22 of the Complaint does not contain allegations regarding "[Plaintiff's] work environment." (Order at 12). Rather, Paragraph 22 is contained in the section of the Complaint entitled "General Factual Allegations," and only references Enterprise Holdings' alleged relationship with its subsidiaries. (*See* Compl. at 5; *c.f. id.* at 9 entitled "Facts Specific To Plaintiff"). Accordingly, Paragraph 22 is specifically tied to the allegations related to the Code—which the Court explicitly rejected.

*Second*, Paragraph 26 of the Complaint is also a legal conclusion drawn from allegations related to the Code. This is apparent from Plaintiff's Response which refers to the allegations in Paragraph 26 as the "logical inference" drawn from the allegations related to the Code. (*See*

---

[9] *See* Compl. ¶ 21 ("As is evident from the Code of Conduct. . ."), *id.* ¶ 23 ("As is evident from the Code of Conduct . . .") & *id.* ¶ 24 ("As is evident from the Code of Conduct").

ECF No. 28 at 4-5.)  The Complaint also makes this clear because Paragraph 26 mirrors the preceding allegations related to the Code.[10]

Accordingly, Plaintiff's general allegations regarding Enterprise Holdings' purported "control" of her "work environment," upon which the Court solely relied, are not separate from the allegations related to the Code.  These general allegations were merely the conclusions Plaintiff wished the Court to draw solely from the Code—which the Court explicitly rejected:

| Plaintiff's "Personal" Allegations Regarding Enterprise Holdings' "Control Of Her Work Environment" | Court's Order Rejecting Plaintiff's Reliance On Code Of Conduct |
|---|---|
| ***Thus***, on information and belief, at all relevant times Defendant Enterprise Holdings, Inc. ***has exercised primary, if not exclusive, control over its subsidiaries'***, including Defendant Enterprise Leasing Company of Chicago, LLC's, practices with respect to employee privacy matters and other employment conditions." (Compl. ¶ 22) (emphasis added). | "The Code ***does not suggest that Enterprise Holdings controls each individual subsidiary***, ***nor does it plausibly show that Enterprise Holdings was responsible for the timekeeping system at the Cook County facility***."  (Order at 11-12) (emphasis added). *** The Code's references to the company as a single unit ***don't suggest anything more than an ordinary parent-subsidiary relationship***." (Order at 14) (emphasis added). |
| "While Plaintiff received her paychecks from Defendant Enterprise Leasing Company of Chicago, LLC, ***the conditions of her work environment, including matters pertaining to employee timekeeping***, employee privacy, employee discipline, and the scope of acceptable employee behavior, were controlled by Defendant Enterprise Holdings." (Compl. ¶ 26). | "But ***the Code alone does not establish that Enterprise Holdings in fact exerted significant control over plaintiff at the Cook County facility***."  (Order at 14). *** "The Code ***does not tell us whether Enterprise Holdings directed and managed the biometric timekeeping at the Cook County facility***." (Order at 12). |

## III.  PLAINTIFF'S "ALTERNATIVE THEORIES" OF LIABILITY ARE UNSUPPORTED BY THE LAW AND FACTS

### A.  Direct-Participant Liability

Under Illinois law, a parent company may be found liable under a theory of direct-participant liability "where there is evidence sufficient to prove that a parent company mandated

---

[10] *See* Compl ¶¶ 17-18 (identifying language within Code related to employee ethics and values), *id.* ¶¶ 19-20, 23 (discussing "privacy"), *id.* ¶ 24 (discussing "timekeeping") & *id.* ¶ 26 (discussing "discipline," "scope of acceptable behavior," "privacy," "timekeeping").

11

an overall business and budgetary strategy and carried that strategy out by its own specific direction or authorization, surpassing the control exercised as a normal incident of ownership in disregard for the interests of the subsidiary." *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 290 (Ill. 2007); *id.* ("The key elements ... are a parent's specific direction or authorization of the manner in which an activity is undertaken and foreseeability.").

The Court should reconsider its Order in this regard for four separate reasons. *First,* the Order does not identify any specific allegations that support its holding that the Complaint sufficiently alleged a direct-participation theory. (Order at 13-14). Indeed, the Order found to the contrary, *i.e.*, that the Code itself "[does not] suggest anything more than an ordinary parent-subsidiary relationship." (*Id.* at 14). Accordingly, the Order failed to establish whether the Complaint alleged that Enterprise Holdings "mandated an overall business strategy," which "surpass[ed] the control" of a "normal incident of ownership." *Forsythe*, 114 Ill. 2d at 290.

*Second*, the Complaint nonetheless fails to sufficiently allege Enterprise Holdings had any involvement in the timekeeping system. Indeed, the Order rejected the Code for this proposition, which represents the ***entire factual basis*** for including Enterprise Holdings as a Defendant.[11] Thus, the Complaint's allegations fail to allege Enterprise Holdings gave "specific direction or authorization" in disregard of its subsidiary. *Forsythe*, 224 Ill. 2d at 290.[12]

*Third,* the Order does not undertake a foreseeability analysis. (*See* Order at 13-14). Absent such an analysis, the Court could not have answered the "key elements" required to state a claim under such a theory. *Forsythe*, 224 Ill. 2d at 290. This lack of analysis alone is sufficient to warrant reconsideration. *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

---

[11] *See* Order at 12 ("The Code does not tell us whether Enterprise Holdings directed and managed the biometric timekeeping at the Cook County facility."); *id.* at 11-12 ("The Code does not. . .plausibly show that Enterprise Holdings was responsible for the timekeeping system at the Cook County facility.").

[12] *See also Holmes v. United Airlines, Inc.*, No. 10 C 8085, 2012 WL 245136, at *7 (N.D. Ill. Jan. 25, 2012) ("Merely alleging that UAL acted as UCH's agent does not sufficiently allege the kind of direction and authorization required to state a claim for negligence based on a direct participant theory regarding such use of the metal ladder.")

*Fourth*, Plaintiff fails to allege, and the Court failed to analyze, whether Plaintiff's purported injuries were foreseeable by Enterprise Holdings. The injury alleged in the Complaint is not the mere collection of Plaintiff's information. A plaintiff cannot state an injury under BIPA by simply stating that their biometric information was collected by a private entity. Instead, a plaintiff must allege that the entity also violated one of Section 15's requirements. *See generally* 740 ILCS 14/15. Thus, the question for the Court is not whether the parent could have foreseen that the subsidiary would collect information, but whether the parent should have foreseen that the subsidiary would not comply with BIPA. Plaintiff would have to allege that Enterprise Holdings should have foreseen that Plaintiff's employer would not comply.

However, a party, generally, cannot foresee intervening illegal acts by others, which relieves liability.[13] Here, the Complaint simply does not plead that Enterprise Holdings could have foreseen Enterprise Leasing would allegedly violate the law. *See Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 2007 WL 3037098, at *6 (N.D. Ill. Oct. 16, 2007) ("Plaintiff fails to state a claim for direct participation liability because plaintiff fails to allege how the operating standards he cites contributed in any way to his injury.").

### B.    Joint-Employer

*First*, unlike other statutes where a joint-employer analysis is linked to an essential element of a claim (like the FLSA where only "employers" are liable), the plain language of

---

[13] *See Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 224 (Ill. 1988) ("Generally, where between the defendant's negligence and the plaintiff's injury an independent, illegal act of a third person has intervened which causes the plaintiff's injury, and without which it would not have occurred, the criminal act is a superseding cause of injury relieving the originally negligent party of liability."); *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 393 (7th Cir. 2018) ("We have recognized, consistently with the Restatement (Third) of Torts, that although 'criminal acts are not superseding causes per se[,] ... acts that are either criminal or intentionally tortious ... are more likely to be adjudged superseding causes.") (quoting *Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618, 620 (2002); *cf. Dugan v. Sears, Roebuck & Co.*, 113 Ill. App. 3d 740, 741, 447 N.E.2d 1055, 1058, *on reh'g sub nom. by Dugan v. Sears, Roebuck & Co.*, 113 Ill. App. 3d 740, 454 N.E.2d 64 (1983) (in a products liability case, stating "misuse was a superseding cause which became the sole proximate cause of the resulting injury if it was not reasonably foreseeable that she would ignore the warnings which she admittedly read in the owner's manual.").

67578909v.7

BIPA does require such analysis because it applies to "private entities," irrespective to their status as an "employer." As recently noted by Judge Tharp in *Ivery*, "***the language of the statute should be the starting place for a determination of Ivery's [employment] status vis-à-vis [alleged joint-employer]***." *Ivery*, 280 F.3d at 1127 (emphasis added).[14] This is in accord with Illinois Supreme Court precedent in the joint employer context holding that whether or not a defendant is an "employer ***as defined in [the statute]***" is a "question of statutory interpretation," which requires the statute be "given its plain and ordinary meaning." *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 105–06 (Ill. 2005). Here, BIPA does not even include the word "employer," much less require an analysis as to whether an entity is an "employer." Here, the Court did not analyze whether BIPA permits liability under a joint-employer theory where BIPA does not require an entity be an "employer."[15]

*Second*, and even more troubling, the Court nonetheless failed to identify ***any*** facts in the Complaint for the proposition that Enterprise Holdings was her employer and, in doing so, failed to address the specific factors necessary to sustain a claim under a joint-employer theory at the pleadings stage. The Court identified the test for joint employment as whether two or more employers "exert significant control over the same employees-where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment." *Vill. of Winfield v. Ill. State Labor Relations Bd.*, 678 N.E.2d 1041, 1044 (Ill. 1997). Relevant factors in determining whether a joint employment relationship exists include "the putative joint employer's role in hiring and firing; promotions and demotions; setting wages,

---

[14] This Court has indeed recognized this principle in *Scheneider v. Cornerstone Pints, Inc.*, noting that a joint employer analysis turns on the question as to whether an entity is an "employer" as defined in the statute. 148 F. Supp. 3d 690, 696 (N.D. Ill. 2015) (Shah, J.)

[15] Relatedly, the Court also failed to analyze whether the joint-employment relationship alleged here was sufficient to attach liability to Enterprise Holdings. *See Shah*, 2013 WL 1828926, at *6 (N.D. Ill. Apr. 29, 2013) ("A joint employer relationship does not automatically expose an employer to liability for actions taken by its co-employer.").

14

work hours, and other terms and conditions of employment; discipline; and actual day-to-day supervision and direction of employees on the job." *Id.* at 1044.

Yet, the Complaint fails to allege ***any facts*** which would permit Plaintiff to pursue such a theory against Enterprise Holdings. Specifically, Plaintiff's Complaint does not allege a single fact suggesting that Enterprise Holdings does any of the following with respect to subsidiary employees: (1) hires and fires; (2) promotes or demotes; (3) sets wages or work hours; (4) disciplines; or (5) engages in day to day supervision. *Id.* Indeed, the Court's failure to conduct such an analysis is directly contradicted by its previous rulings in this regard. *See Richardson v. Help at Home, LLC*, 2017 WL 2080448, at *2 (N.D. Ill. May 15, 2017) (Shah, J.) (granting in part motion to dismiss noting that complaint "is devoid of any allegations to support a theory of joint liability" and "fails to sufficiently allege that [plaintiff] performed work for [alleged joint employer]."). Indeed, courts in this District routinely reject and dismiss joint-employer theories at the pleading stage where, like here, a plaintiff asserts conclusory "control" over various aspects of their employment absent specific facts, and fails to allege specific details of the alleged joint-employer's specific interactions with the plaintiff ***herself***—which are completely absent here.[16] Thus, the Court should have foreclosed the possibility of joint-employer liability.

## CONCLUSION

Defendants respectfully request that the Court reconsider and reverse the Order.[17]

---

[16] *See, e.g., Shah*, 2013 WL 1828926, at *3 ("The allegations in Shah's Complaint, assumed to be true at this stage of the proceedings, fail to demonstrate that DISYS exercised any, much less "significant" control over his employment. The Complaint is devoid of any facts alleging DISYS controlled Shah's work conditions, assignments, evaluations, or performance. A joint employer relationship does not lie under such circumstances.") (collecting cases); *Brunner v. Liautaud*, 2015 WL 1598106, at *4); *Ivery v. RMH Franchise Corp.*, 280 F.3d at 1127-1132 (same); *Boyce v. SSP Am. MDW, LLC*, 2019 WL 3554153, at *4 (same); *Aiello v. Invision Mktg. Sols.*, No. 17 C 985, 2019 WL 1875354, at *2 (N.D. Ill. Apr. 26, 2019) (same); *See, e.g., Aiello v. S. Wine & Spirits of Am., Inc.*, 2019 WL 6210938, at *2–3 (N.D. Ill. Nov. 21, 2019).

[17] In the alternative, Defendants' request that the Court certify the questions for interlocutory appeal to the Seventh Circuit pursuant to 28 U.S.C. § 1292(b) for the reasons contained in Defendants' Motion To Certify Questions For Appeal, filed concurrently herewith.

**DATED: January 20, 2021**

Respectfully submitted,

ENTERPRISE LEASING COMPANY OF
CHICAGO, LLC and ENTERPRISE
HOLDINGS, INC.

By /s/ *Thomas E. Ahlering*

 One of Their Attorneys

Erin Dougherty Foley
*edfoley@seyfarth.com*
Thomas E. Ahlering
*tahlering@seyfarth.com*
Alexandra S. Oxyer
*aoxyer@seyfarth.com*
SEYFARTH SHAW LLP
233 S. Wacker Dr., Suite 8000
Chicago, Illinois 60606
Telephone: 312-460-5000
Facsimile: 312-460-7000

16

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 20th day of January, 2021, a true and correct copy of the

foregoing document was filed with the Clerk of Court by using the CM/ECF system which will

send notification to the e-mail addresses of all counsel of record denoted on the electronic Mail

Notice List.


<u>/s/*Thomas E. Ahlering*</u>
Thomas E. Ahlering

67578909v.7