UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAWON A. WORDLAW,

                    Plaintiff,

     v.

ENTERPRISE LEASING COMPANY OF
CHICAGO, LLC and ENTERPRISE
HOLDINGS, INC.,

                    Defendants.

No. 20 CV 3200

Judge Manish S. Shah

### ORDER

Defendants' motion to reconsider [33] and motion to certify questions for appeal and stay proceedings pending appeal [35] are denied.

### STATEMENT

Plaintiff Dawon Wordlaw alleged that Enterprise Leasing Company of Chicago, LLC and its parent company, Enterprise Holdings, Inc., collected, retained, and disseminated her fingerprints without complying with the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6); I denied the motion because I concluded that Wordlaw stated a BIPA claim against both defendants. [30].[1] Defendants now move to reconsider under Federal Rule of Civil Procedure 54(b), or alternatively, to certify certain questions for interlocutory appeal under 28 U.S.C. § 1292(b). [33], [35].

*Defendants' Motion to Reconsider*

An interlocutory order denying a motion to dismiss "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (Rule 54 governs non-final orders). Motions to reconsider under Rule 54(b) are assessed under the "same standard applicable to motions under

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. For a more detailed summary of the facts, see the December 21, 2020 Memorandum Opinion and Order, [30] at 2–4.

Rule 59(e)." *Lockhart v. HSBC Finance Corp.*, No. 13 C 9323, 2020 WL 6134984, at *7 (N.D. Ill. Oct. 19, 2020). Motions to reconsider serve a "limited function" to correct "manifest errors of law or fact" or to "present newly discovered evidence." *Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 474 (7th Cir. 2008) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)). A manifest error is not demonstrated by the "disappointment of the losing party," but rather the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645, 653 (7th Cir. 2014) (quoting *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). A motion to reconsider is "not to be used to 'rehash' previously rejected arguments." *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (quoting *Oto*, 224 F.3d at 606). Accordingly, issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted).

This is not one of those rare occasions. Defendants have not identified any facts or controlling precedent that I ignored or misapplied. They claim that I improperly credited legal conclusions as facts; got the law wrong on group pleading, BIPA liability, and alternative theories of liability; and contradicted myself. Defendants' arguments and their quibbles with the order do not reveal any manifest errors of law or fact that would justify reconsideration.

Defendants say that I improperly credited plaintiff's allegations that Enterprise Holdings controlled her work environment. [34] at 6. These allegations, defendants say, "are neither specific, nor factual, but rather legal conclusions based solely on allegations regarding Enterprise Holdings' Code of Conduct ... which represented the entire factual basis" for plaintiff's claim against Enterprise Holdings. *Id.* (emphasis omitted). Defendants assert that I relied "solely" on two legal conclusions from the complaint to sustain plaintiff's claim against Enterprise Holdings. *Id.* at 12–13. Plaintiff failed, they say, to offer any "specific, factual allegations that Enterprise Holdings had any 'control' over her 'work environment,' from which the Court could plausibly conclude that Enterprise Holdings actively collected or captured her information." *Id.* at 13–14. Defendants also argue that my acceptance of plaintiff's allegations of control is in tension with my rejection of the Code. *Id.* at 14–15 ("A plain reading of the Complaint makes clear that Plaintiff's 'personal experience[s]' are mere legal conclusions based upon the Code.").

The complaint separates plaintiff's conclusions based on the Code from allegations of "facts specific to plaintiff." [21] at 9–10, ¶¶ 25–32. In the "facts specific to plaintiff" section of the complaint, plaintiff makes no reference to the Code, and I infer that this section describes plaintiff's personal experience. Here plaintiff alleges a straightforward claim: she was employed by defendants at the Cook County Enterprise facility when, from 2016 to 2019, defendants daily scanned her fingerprints without her consent and in violation of BIPA. *Id.* This is an "entirely

2

plausible scenario, whether or not it describes what 'really' went on in this plaintiff's case." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010). And contrary to defendants' motion, at this stage, "specific facts are not necessary;" the complaint need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1098–99 (7th Cir. 2015) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Plaintiff has done so.

Plaintiff's allegation that Enterprise Holdings controlled critical aspects of her work environment is not a legal conclusion either. A legal conclusion is a "formulaic recitation of the cause of action and nothing more." *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). As such, a word or phrase may be a legal conclusion in one context but not another. All of the cases on which defendants rely, for example, involve the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. [34] at 13. And true enough, a bare allegation of "control" may constitute an impermissible legal conclusion under FLSA. Not so in the BIPA context, however. Plaintiff's allegation of Enterprise Holdings's control over employee timekeeping and privacy instead describes a relevant factual aspect of her personal experience working for defendants. This factual allegation raises the reasonable inference that Enterprise Holdings administered the alleged fingerprint-scanning system, and in turn, plausibly suggests that Enterprise Holdings collected, retained, and disseminated her fingerprints.

Defendants also attempt to rehash their previous argument that the complaint engages in improper group pleading. Because I noted that the complaint does not distinguish between the two defendants in its central allegations, defendants argue that *Bank of America, N.A. v. Knight*, 725 F.3d 815 (7th Cir. 2013), requires dismissal. [34] at 10. Defendants say that the circumstances here are "almost identical" to *Knight*. *Id*. But that's not right. The plaintiff there brought several claims against multiple managers and directors of a company based on an allegation that they "looted the corporation ... without any details about who did what." *Knight*, 725 F.3d at 818. The court held that the complaint failed to put each defendant on notice of his or her wrongdoing, and noted that a "complaint based on a theory of collective responsibility must be dismissed." *Id*. "The details of the alleged looting were involved and complex ... which made the plaintiff's failure to give any indication of which defendants engaged in which acts problematic." *Guaranteed Rate, Inc. v. Conn*, 264 F.Supp.3d 909, 931 (N.D. Ill. 2017).

The lack of any factual detail and the complexity of the claims in *Knight* are a far cry from plaintiff's straightforward BIPA claim against the two defendants here. *See Swanson*, 614 F.3d at 405 (noting that "more complex case[s] ... require more detail, both to give the opposing party notice of what the case is all about and to show how ... the dots should be connected"). And although plaintiff does not distinguish between defendants in her principle allegations, she does not advance a theory of collective responsibility. The complaint instead pleads the responsibility of each defendant by directing its allegations against both. *See Brooks*, 578 F.3d at 582.

3

Defendants next argue that I misapplied the law on BIPA. They argue that Enterprise Holdings's involvement in, or control over, the Cook County timekeeping system is irrelevant to its liability under BIPA. [34] at 11–12. Instead of control, they say, "BIPA's regulations apply only to entities that *actively* collect, capture, purchase, receive through trade, or otherwise obtain biometric data or possess biometric data." *Id.* at 11–12 (citing *Heard v. Becton, Dickinson & Co.*, 440 F.Supp.3d 960, 965–66 (N.D. Ill. 2020); *Namuwonge v. Kronos, Inc.*, 418 F.Supp.3d 279, 286 (N.D. Ill. 2019)).[2]

But *Heard* and *Namuwonge* are not contrary. In both cases, plaintiffs sued third-party companies who supplied fingerprint-timekeeping devices to their respective employers. *Heard*, 440 F.Supp.3d at 962–64; *Namuwonge*, 418 F.Supp.3d at 281–82. *Heard*, for example, held that for Section 15(b)'s requirements to apply, plaintiff needed to show that the device supplier took "an active step to 'collect, capture, purchase, receive through trade, or otherwise obtain' biometric data." *Heard*, 440 F.Supp.3d at 966. In each case, the court dismissed the Section 15(b) claim against the supplier because allegations that an employer impermissibly collected fingerprints did "not enable the court to 'assess [the supplier's] actual involvement' in the alleged collection of biometric data." *Id* at 967.

These cases do not undermine plaintiff's claims here. Plaintiff alleges that Enterprise Holdings's itself violated BIPA via its control over the fingerprint-timekeeping system. The allegations of control are important because they raise reasonable inferences about who, exactly, collected, retained, and disseminated fingerprint data. If Enterprise Holdings controlled employee timekeeping and privacy matters, as plaintiff alleges, then it is reasonable to infer that Enterprise Holdings also controlled the fingerprint-scanning system. And if it administered the system, then it was affirmatively (or "actively") collecting plaintiff's fingerprints daily from 2016 to 2019 without her consent.

The defendants then argue that I misapplied the law and did not apply the factors necessary to sustain a claim under plaintiff's alternative theories of liability. But the first sentence of that section made clear that the alternative theories played no role in the result of the order. [30] at 13. Defendants seem to grasp this, repeatedly referring to this part of the order as "unnecessary" and "dicta." [34] at 6–7, 9. At the same time, defendants claim that I "held" that the complaint "sufficiently alleged a direct-participation theory" and that I "should have foreclosed the possibility of joint-employer liability." [34] at 17, 20.

---

[2] The proposition for which defendants cite these cases—that to be liable under BIPA, a private entity must "actively" collect, capture, purchase, receive through trade, or otherwise obtain biometric data—is limited to BIPA Section 15(b). That's because while Sections 15(a), (c), (d), and (e) of BIPA all apply to entities "in possession of" biometric data, Section 15(b) does not. *See Heard*, 440 F.Supp.3d at 966; *Namuwonge*, 418 F.Supp.3d at 285–86.

4

The order did not hold that plaintiff had adequately alleged any alternative theories of liability; I simply rejected defendants' arguments seeking to close the door on such theories. I touched on these arguments largely because defendants raised them in their memorandum; plaintiff responded to these arguments in her brief; and defendants again raised arguments based on these theories in reply. *See* [26] at 10–11 ("[T]o the extent that the allegations in Plaintiff's Amended Complaint imply that Enterprise Holdings 'employed' Plaintiff and signal that she intends to pursue an alternative theory of liability, such as a single-employer, joint-employer, agency, or vicarious liability theory (none which have any basis in the plain language of BIPA), courts (including the United States Court of Appeals for the Seventh and Third Circuits) have definitively rejected such a theory—including holding that Enterprise Holdings is not a joint-employer as a corporate parent."); [28] at 8–12; [29] at 9–12. The order rejected defendants' arguments that BIPA's plain text and a distinguishable out-of-circuit case somehow foreclosed traditional theories of agency or vicarious liability under BIPA. It did not, however, resolve the ultimate issue whether these theories are available, as a general matter or specifically in this case. Defendants will have ample opportunity to show why these theories should not apply to the facts of the case at summary judgment or trial. But for now, if anything, it is the defendants who are asking the court to go out of its way to foreclose theories of liability that go beyond the sufficiency of the complaint.

Defendants' fear that my refusal to close the door on alternative theories of liability "may have wide-ranging ramifications for Illinois companies" is overwrought. [34] at 7. If Enterprise Holdings really had nothing to do with the fingerprint-timekeeping system, then discovery ought to be minimal and the failure of plaintiff's proof will be swift. Given how confident defendants are in their factual innocence, I fail to see how my decision not to resolve the alternative-theories issues at this stage does them (or anyone else) any harm.

Finally, defendants claim that the order's "central holdings also undermine one another." [34] at 6. They don't. Momentarily setting aside the fact that the alternative-theories section contained no "holding," there's no inconsistency in the two statements defendants identify. First, I observed that Wordlaw's lawyers "certified that their factual contentions have or are likely to have evidentiary support" under Rule 11 and that "I expect that they've leveled such accusations in good faith." [30] at 8. Second, I noted that "plaintiff acknowledged that discovery may later reveal that Enterprise Holdings did not directly collect, retain, and disclose biometric data." *Id*. at 13. Plaintiff may both (1) have a good-faith basis to believe that their factual contentions are likely to have evidentiary support, and (2) turn out to be wrong. The latter would not automatically reveal bad faith or a violation of Rule 11.

The motion to reconsider is denied.

5

*Defendants' Motion to Certify Questions for Appeal*

A district court may certify for interlocutory appeal an order that, in its opinion, "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). In other words, "there must be a question of law, it must be controlling, it must be contestable, and its resolution must promise to speed up the litigation." *Ahrenholz v. Board of Trustees of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000).

The first, second, and fourth questions defendants seek to certify concern alternative theories of liability that the order did not resolve. These are not controlling questions of law that would materially advance the ultimate termination of the litigation. The remaining question that defendants seek to certify is: "Whether general allegations related to a holding company's purported 'control' over subsidiary employees' 'work environment,' including 'employee timekeeping, employee privacy, employee discipline, and the scope of acceptable employee behavior' are sufficient to plausibly state a claim that a private [entity] directly violated BIPA." [35] at 7. This question addresses the sufficiency of the complaint's factual allegations under Federal Rule of Civil Procedure 8. This is a routine legal question—not the kind that merits interlocutory appeal. *See Ahrenholz*, 219 F.3d at 676 ("Section 1292(b) was not intended to make denials of" interlocutory orders "routinely appealable."); *id.* at 677 (7th Cir. 2000) ("[A] 'question of law' means an abstract legal issue rather than an issue of whether summary judgment should be granted."). Another problem is that dismissal of the claims against Enterprise Holdings would not materially advance the ultimate termination of the litigation. Enterprise Leasing Company remains in the case either way, and as a result, interlocutory appeal and a stay may actually prolong the litigation.

The motion to certify questions for interlocutory appeal is also denied.

ENTER:

Date: January 28, 2021

Manish S. Shah
U.S. District Judge