**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DAWON A. WORDLAW, on behalf of herself
and all others similarly situated,

                Plaintiff,

    v.

ENTERPRISE LEASING COMPANY OF
CHICAGO, LLC; ENTERPRISE HOLDINGS,
INC.,

                Defendants.

Case No. 20-cv-03200

Hon. Manish S. Shah

Hon. Magistrate Gabriel A. Fuentes

**PLAINTIFF'S *UNOPPOSED* MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Myles McGuire
Evan M. Meyers
Timothy P. Kingsbury
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
tkingsbury@mcgpc.com
bduffner@mcgpc.com

*Counsel for Plaintiff and the Settlement Class*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................... 2

    A.    The Biometric Information Privacy Act. .................................................... 2

    B.    Plaintiff's Claims And Procedural History.................................................. 3

    C.    Settlement Negotiations. .............................................................................. 5

III.   SETTLEMENT TERMS ...................................................................................... 6

    A.    The Proposed Settlement Class.................................................................... 6

    B.    Monetary And Prospective Relief................................................................ 6

    C.    Notice And Settlement Administration......................................................... 7

    D.    Opt-Out And Objection Procedure. ............................................................. 9

    E.    Attorneys' Fees And Service Award. ........................................................... 9

    F.    Release of Liability. ..................................................................................... 9

IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL......... 10

    A.    The Court Will Likely Find That The Proposed Settlement Is Fair, Reasonable, And Adequate. ..................................................................................... 11

        1. The Settlement was reached only after extensive motion practice, discovery, and arm's-length negotiation ......................................................... 12

        2. The relief provided by the Settlement is adequate and provides equal relief to all Settlement Class Members ..................................................... 13

    B.    The Court Will Likely Find That The Proposed Settlement Class Meets All Requirements For Certification For Purposes Of Settlement Under Fed. R. Civ. P. 23(a) .............................................................................................. 17

        1. The Proposed Settlement Class is Ascertainable based on Objective Criteria. 17

            i. The Proposed Settlement Class meets all four prerequisites to certification under Federal Rule 23(a). ............................................. 17

            ii. Numerosity ......................................................................................... 19

            iii. Commonality ..................................................................................... 19

            iv. Typicality .......................................................................................... 21

            v. Adequacy ........................................................................................... 21

        2.The Proposed Settlement Class Is Certifiable Under Fed. R. Civ. P. 23(b)(3).. 23

            i. Common questions predominate within the Settlement Class............... 23

ii. A class action is the most efficient way of adjudicating the putative Settlement Class Members' claims and is superior to a multitude of individual lawsuits or no individual lawsuits at all.............................. 24

iii. The proposed Notice Plan satisfies Due Process and the requirements of Fed. R. Civ. P. 23........................................................................... 26

iv. Plaintiff's Counsel Should Be Appointed Class Counsel..................... 27

V.  CONCLUSION............................................................................................................ 28

# **TABLE OF AUTHORITIES**

## **Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ................................................. 25

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................................... 22-25

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ............................................................................................. 10

*Barragan v. Evanger's Dog & Cat Food Co.*,
  259 F.R.D. 330, 334 (N.D. Ill. 2009) ................................................................................ 20

*Bedford v. Lifespace Communities, Inc.*,
  No. 20-cv-04574, (N.D. Ill. May 12, 2021) ................................................................... 8, 15

*Birchmeier v. Caribbean Cruise Line, Inc.*,
  302 F.R.D. 240 (N.D. Ill. 2014) ........................................................................................ 18

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
  280 F.R.D. 408 (N.D. Ill. 2012) ........................................................................................ 18

*Cothron v. White Castle System, Inc.*,
  Dkt. No. 128004 (argued on May 15, 2022) ..................................................................... 14

*Davis, et al., v. Heartland Employment Services, LLC*,
  No. 19-cv-00680 (N.D. Ill. Oct. 25, 2021) ....................................................................... 16

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .......................................................................................................... 26

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) .......................................................................................................... 23

*Gasper v. Linvatec Corp.*,
  167 F.R.D. 51 (N.D. Ill. 1996) .......................................................................................... 21

*Gen. Tel Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) .......................................................................................................... 25

*Golon v. Ohio Savs. Bank*,
  98 C 7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999) ..................................................... 23

*Gomez v. Ill. State Bd. of Educ.*,
  117 F.R.D. 394 (N.D. Ill. 1987) ........................................................................................ 22

*Haynes v. Logan Furniture*,
  503 F.2d 1161 (7th Cir. 1974) ........................................................................................... 24

*Hinman v. M & M Rental Ctr., Inc.*,
  545 F. Supp. 2d 802 (N.D. Ill. 2008) ............................................................................ 19-24

*In re AT&T Mobility Wireless Data Services Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010) ................................................................................ 10-11, 26

*In re Bridgestone/Firestone, Inc.*,
   288 F.3d 1012 (7th Cir. 2002) ...................................................................... 24

*In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*,
   No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016) ................................... 26

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ...................................................................... 11

*Jones v. CBC Rest. Corp.*,
   No. 19-cv-06736 (N.D. Ill. Nov. 11, 2020) ................................................. 8, 16

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) ...................................................................... 20

*Kessler v. Am. Resorts Int'l*,
   05 C 5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ................................. 11

*Kurgan*, v. *Chiro One Wellness Ctrs. LLC*,
   No. 10-cv-1899, 2014 WL 642092 (N.D. Ill. Feb. 19, 2014) ........................... 20-21

*Lemon v. Int'l Union of Operating Eng's.*,
   216 F.3d 577 (7th Cir. 2000) ...................................................................... 23

*McCabe v. Crawford & Co.*,
   210 F.R.D. 631 (N.D. Ill. 2002) .................................................................. 19

*Mitchem v. Illinois Collection Serv., Inc.*,
   271 F.R.D. 617 (N.D. Ill. 2011) .................................................................. 17

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ...................................................................... 18

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .................................................................................. 25

*Quarles v. Pret A Manger (USA) Limited*,
   No. 20-cv-07179, (N.D. Ill. May 4, 2022) ............................................... 16-17

*Radamanovich v. Combined Ins. Co. of Am.*,
   216 F.R.D. 424 (N.D. Ill. 2003) .................................................................. 23

*Randolph v. Crown Asset Mgmt., LLC*,
   254 F.R.D. 513 (N.D. Ill. 2008) .................................................................. 19

*Retired Chicago Police Ass'n v. City of Chicago*,
   7 F.3d 584 (7th Cir. 1993) ......................................................................... 21

*Roach v. Walmart, Inc.*,
   No. 2019-CH-01107 (Cir. Ct. Cook Cnty., Ill. 2020) ..................................... 16

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ................................................................. 20-21

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................... 15

*Smith v. Nike Retail Servs., Inc.*,
    234 F.R.D. 648 (N.D. Ill. 2006)........................................................... 19

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .............................................................. 13

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*,
    No. 02-cv-1109, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004)................. 16

*Tims v. Black Horse Carriers, Inc.*,
    Dkt. No. 127801 (argued on September 22, 2022) ................................ 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................................... 20

## Statutes and Rules

28 U.S.C. § 1715 ................................................................................... 27

Fed. R. Civ. P. 23 ........................................................................... *passim*

740 ILCS 14/1 *et seq.*..................................................................... *passim*

## Treatises

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure (2d ed. 1987) .............. 17

Conte & Newberg, 4 *Newberg on Class Actions* (4th Ed. 2002).................................. 10

*Manual for Complex Litigation* (4th ed. 2004) .......................................................... 10

# I. <u>INTRODUCTION</u>

After more than two years of litigation, extensive discovery efforts, and months of contentious negotiations, including a settlement conference before Magistrate Judge Gabriel A. Fuentes, the Parties[1] are pleased to report that they have reached a Settlement that, if approved, will provide substantial monetary and non-monetary relief to the Settlement Class. In this putative class action brought under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, the Parties have reached a proposed Settlement under which Defendants Enterprise Leasing Company of Chicago, LLC and Enterprise Holdings, Inc. ("Defendants") will establish a non-reversionary Settlement Fund in the amount of $504,968.75 from which the Settlement Class Members will be compensated on an equal basis without having to submit claims or take any other action. By this Motion, Plaintiff Dawon Wordlaw ("Plaintiff"), seeks preliminary approval of the Settlement Agreement, claims procedure, and the proposed form and method of Notice pursuant to Fed. R. Civ. P. 23(e).

While Plaintiff maintains that, absent a settlement, she would be able to secure class certification and prevail on the merits at trial, such success would be far from assured. From the outset of this case, Defendants have vigorously disputed Plaintiff's claims and have made clear that they possess the resources to continue to defend this case through trial and appeal. Accordingly, by any measure, this Settlement is an extraordinary result and, if approved, will bring meaningful relief to hundreds of individuals, as well as certainty and closure to what has been, and likely would continue to be, highly contentious and costly litigation.

---

[1] Unless otherwise stated, capitalized terms have the same meaning as those terms are used in the Settlement Agreement, attached hereto as <u>Exhibit A</u>.

As explained in further detail below, the Court should grant preliminary approval to the Settlement because the Settlement terms here are clearly favorable such that the Court "will likely be able to" find that the Settlement is "fair, reasonable, and adequate" at the final approval stage. In fact, the Settlement provides similar relief to other BIPA settlements that have been approved in this District and in other courts throughout Illinois. Preliminary approval of the Settlement and distribution of notice to the Settlement Class are thus in the best interests of the putative Class Members, and the Court is also "likely" to find that the proposed Settlement Class meets all of the requirements for certification of a settlement class under Fed. R. Civ. P. 23. Accordingly, Plaintiff respectfully requests that the Court enter an Order: (i) granting preliminary approval to the Settlement; (ii) appointing Plaintiff as Class Representative; (iii) approving the proposed form and method of Notice; (iv) appointing Myles McGuire, Evan M. Meyers, Timothy P. Kingsbury, and Brendan J. Duffner of McGuire Law, P.C. as Class Counsel; and (v) scheduling a final approval hearing to determine whether the Settlement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2) and whether the Settlement Class should be finally certified.

## II.     BACKGROUND

### A.     The Biometric Information Privacy Act

BIPA is an Illinois statute enacted in 2008 that provides individuals with certain protections for their biometric information. To effectuate its purpose, BIPA requires private entities that seek to use biometric identifiers (e.g., fingerprints and handprints) and biometric information (any information gathered from a biometric identifier which is used to identify an individual) to:

> (1)     inform the person whose biometrics are to be collected in writing that their biometrics will be collected or stored;

(2)     inform the person whose biometrics are to be collected in writing of the specific purpose and the length of term for which such biometrics are being collected, stored and used;

(3)     receive a written release from the person whose biometrics are to be collected allowing the capture and collection of their biometrics;

(4)     receive consent before disclosing or otherwise disseminating the person's biometrics; and

(4)     make publicly available retention schedule and guidelines for permanently destroying the collected biometrics. 740 ILCS 14/15.

BIPA was enacted in large part to protect individuals' biometrics, provide them with a means of enforcing their statutory rights, and regulate the practice of collecting, using and disseminating such sensitive information.

**B.     Plaintiff's Claims And Procedural History**

Plaintiff alleges that while she was working for Defendant Enterprise Leasing Company of Chicago, LLC in 2016, Defendants implemented a biometrically-enabled timekeeping system to monitor Plaintiff's and the Settlement Class Members' work hours. (*See* First Amended Class Action Complaint ("Complaint" or "FAC"), Dkt. 21, ¶ 25.) Plaintiff alleges she used her fingerprint to "clock-in" and "clock-out" using this system until Plaintiff's employment relationship with Enterprise Leasing Company of Chicago, LLC ended in March 2019. (*Id.,* ¶ 27.) On April 3, 2020, Plaintiff filed a class action lawsuit in the Circuit Court of Cook County, Illinois, Chancery Division against Defendants alleging violations of BIPA. On May 29, 2020, Defendant Enterprise Leasing Company of Chicago, LLC removed the case to this Court, where it was assigned to the Honorable Manish S. Shah.

On August 31, 2020, Defendants moved to dismiss Plaintiff's initial Complaint. On September 21, 2020, Plaintiff filed her First Amended Complaint ("FAC," Dkt. 21) pursuant to Fed. R. Civ. P. 15(a)(1). In the FAC, Plaintiff alleges that prior to collecting her biometrics, Defendants did not inform Plaintiff in writing that her biometrics were being collected, stored, used, or disseminated, or provide her with any disclosures relating to their collection, storage, or dissemination of her biometrics. (*Id.,* ¶ 29.) Plaintiff also alleges that Defendants did not seek, and Plaintiff never provided, any written consent relating to the collection, capture, or use of her biometrics. (*Id.,* ¶ 30.) Plaintiff further alleges that prior to taking Plaintiff's biometrics, Defendants did not make publicly available any written biometric retention schedule or policy, nor did Defendants disclose any guidelines for permanently destroying her collected biometrics. (*Id.,* ¶ 31.) Lastly, Plaintiff alleges that Defendants did not obtain consent from Plaintiff to disseminate her biometrics to third parties, including any data storage or payroll processing vendors. (*Id.,* ¶ 32.)

On October 13, 2020, Defendants moved to dismiss Plaintiff's FAC under Fed. R. Civ. P. 12(b)(6), arguing that: (i) Plaintiff failed to allege facts supporting the inclusion of Enterprise Holdings, Inc. in this lawsuit; (ii) Plaintiff engaged in improper "group pleading;" (iii) Plaintiff failed to state any claim for violation of BIPA Sections 15(a), (b), or (d); (iv) Plaintiff failed to plead recklessness or intent; and (v) Plaintiff's claims were preempted by the Illinois Workers' Compensation Act. (Dkts. 25-26.) On December 21, 2020, following full briefing, the Court issued a Memorandum Opinion and Order denying Defendants' Motion to Dismiss. (Dkt. 30.) On January 20, 2021, Defendants filed a Motion for Reconsideration. (Dkts. 33-34.) Defendants also simultaneously filed a Motion to Amend to Certify Questions for Appeal and Stay Proceedings. (Dkts. 35-36.) On January 28, 2021, the Court denied both motions. (Dkt. 38.)

On February 2, 2021, Defendants filed their Answer to Plaintiff's FAC, and on February 3, 2021, the Court entered a discovery schedule. (Dkts. 39-41.) Over the course of the next year, the Parties engaged in substantial discovery relevant to both class certification issues and the merits of Plaintiff's individual claims. Defendants produced thousands of documents, including hundreds of purported biometric consent forms signed by putative Class members. Plaintiff took depositions of two individuals in their personal capacities as well as two depositions of Defendants' Rule 30(b)(6) designees, and Defendants took two depositions of Plaintiff. While the Parties met and conferred regularly in an attempt to resolve numerous disputes, Plaintiff filed a Motion to Compel (Dkt. 56) and Defendants filed a Motion to Quash Plaintiff's subpoena to third party Kronos Incorporated (Dkt. 66), the provider of the timekeeping technology at issue in this case. At the Parties' request, the Court extended the fact discovery cutoff several times. (Dkts. 51, 58, 60, 65, 77.) Fact discovery closed on April 29, 2022. (Dkt. 77.)

### C.  Settlement Negotiations

On May 23, 2022, the Parties requested a referral to Magistrate Judge Gabriel A. Fuentes for a settlement conference. (Dkt. 85.) On July 13, 2022, the Parties attended an all-day remote settlement conference with Judge Fuentes. (Dkt. 92.) Counsel for the Parties, Plaintiff, and a representative for Defendants were in attendance. With the assistance of Judge Fuentes, the Parties reached a settlement in principle by which the Parties agreed to resolve all matters pertaining to, arising from, and associated with the Litigation, including all claims Plaintiff and Settlement Class Members have or may have had against Defendants and any Released Parties, as those terms are defined in the Settlement Agreement. (*Id.*) In the more than four months following the formal settlement conference, the Parties engaged in further negotiations to come to terms regarding the

key elements of the Settlement, including the relief to be provided to the Class Members, the scope

of the release, and the form and method of Notice to be provided to the Settlement Class Members.

## III.   SETTLEMENT TERMS

### A.   The Proposed Settlement Class

The proposed Settlement would create a Settlement Class defined as follows:

> All individuals who scanned their finger for timekeeping purposes while working
> for Enterprise Leasing Company of Chicago, LLC or Enterprise Rent-A-Car
> Company – Midwest, LLC within the state of Illinois at any time between April 3,
> 2015 and the date of Preliminary Approval, and who (i) did not first execute a
> written release of claims prior to the date of Preliminary Approval, or (ii) were not
> represented by the Unions during their employment.[2]

(Ex. A, ¶ 47.)

### B.   Monetary And Prospective Relief

As part of the Settlement, Defendants have agreed to establish a non-reversionary

Settlement Fund in the amount of $504,968.75. (Ex. A, ¶ 50(a).) Defendants have represented, and

the Parties agree, based on Defendants' records, that the Settlement Class consists of 715

individuals. (*Id.*) If the final number of Settlement Class Members identified on the class list

provided by Defendants is greater than 715, the Settlement Fund shall be increased by $706.25 for

each additional Settlement Class Member over 715. (*Id.*) The entire amount of the Settlement Fund

will be distributed directly to Settlement Class Members, with no need to submit a claim, on a *pro*

*rata* basis after deductions for the costs of notice and administration, a Fee Award, and a Service

Award to Plaintiff. (*Id.*, ¶ 50(b).) As discussed below, based on the Settlement Administrator's

anticipated expenses, as well as the amounts Plaintiff and proposed Class Counsel intend to seek

for a Fee Award and Service Award here, Plaintiff anticipates that each Settlement Class Member

---

[2] "Unions" means the Automobile Mechanics Unions Local 701, IAM & AW and the Miscellaneous
Warehousemen, Airline, Automotive Parts, Service, Tire & Rental, Chemical & Petroleum, Ice, Paper and
Related Clerical & Production Employees Union, Local No. 781, Affiliated with the International
Brotherhood of Teamsters, Chicago and Vicinity, Illinois. (Ex. A, ¶ 43.)

will receive between $400 and $500, a significant amount that is well within the range of previously-approved BIPA settlements.

Moreover, in addition to monetary relief, the Settlement also provides the Settlement Class Members with non-monetary relief whereby Defendant Enterprise Chicago will revise its existing biometric consent policy to contain language identifying both Enterprise Holdings, Inc. and Enterprise Chicago's relevant timekeeping vendors. (Ex. A, ¶ 55.) This relief will benefit not just the Settlement Class Members, but future employees of Defendant Enterprise Leasing Company of Chicago, LLC, as well.

### C. Notice And Settlement Administration

The Parties have agreed to retain Analytics Consulting, LLC as the Settlement Administrator. To effectuate Notice, Defendants, with the assistance of the Settlement Administrator as appropriate, shall create a class list based on readily available information already within their possession ("Class List"). (Ex. A, ¶ 66(a).) Defendants shall provide the Class List, which will include the full names and last known mailing addresses of potential Settlement Class Members based on information in Defendants' records, to the Settlement Administrator and to Class Counsel within fourteen (14) days after entry of the Preliminary Approval Order. (*Id.,* ¶ 66(b).)

Within 35 days of the Court entering a Preliminary Approval Order, direct notice, substantially in the form of Exhibit B to the Settlement Agreement, shall be sent to Settlement Class Members via U.S. Mail where Defendants have a last-known mailing address or where the address can be determined by the Settlement Administrator. (*Id.*, ¶ 67(c).) In addition to the robust direct notice being provided, the Settlement Administrator will also arrange for the establishment of a Settlement Website that Settlement Class Members can visit and learn about the Litigation

and the Settlement. (*Id.*) The Settlement Website will display the full Settlement Agreement, a detailed Long Form Notice, important court filings from this Litigation, and answers to frequently asked questions. The format and language of each form of notice have been carefully drafted in straightforward, easy-to-read language to clearly inform Settlement Class Members of all the material aspects of the Settlement, such as the relief they are entitled to under the Settlement, the amount of the Fee Award and Service Award that may be sought, and instructions and deadlines for opting out from, or objecting to, the Settlement. (*Id.*, at Exs. B-C.)

If the Settlement is granted final approval, monetary relief will be provided via check to the Settlement Class Members who do not exclude themselves from the Settlement. (*Id.,* ¶ 50(b).) Settlement Class Members will <u>not</u> have to submit a claim form or otherwise "opt-in" to the Settlement Class. Any uncashed check amounts from the Settlement Fund following the first distribution of payments to the Settlement Class Members (including checks disbursed to Settlement Class Members that remain uncashed for any reason within 90 days of issuance of the check) will be redistributed on an equal, *pro rata* basis to Settlement Class Members who cashed their initial check. (*Id.,* ¶ 50(f).) Any uncashed amounts after the second distribution shall be distributed to a *cy pres* recipient(s) selected by the Parties and approved by the Court. No portion of the Settlement Fund will revert to or be returned to Defendant. This targeted individual notice and method of monetary distribution to the Settlement Class Members without a claims process is consistent with what courts in this Circuit and elsewhere have regularly approved in other BIPA settlements.[3]

---

[3] *See, e.g., Jones v. CBC Rest. Corp.,* 19-cv-06736, Dkt. 53 (N.D. Ill. Nov. 11, 2020) (Alonso, J.); *Bedford v. Lifespace Communities, Inc.,* No. 20-cv-04574, Dkt. 31 (N.D. Ill. May 12, 2021) (Shah, J.).

### D. Opt-Out And Objection Procedure

Settlement Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. (*Id.*, ¶¶ 69–74.) The procedures and deadlines for filing exclusion requests and objections will be referenced in the notices and on the Settlement Website. (*Id.* ¶¶ 69–74, Exs. B-C.) The notices will inform Settlement Class Members that the Final Approval Hearing will be their opportunity to appear and have any objections heard. (*Id.*, ¶¶ 71-73, Exs. B-C.) The notices will also inform Settlement Class Members that they will be bound by the release unless they timely exercise their right to exclusion. (*Id.*, ¶ 70(b).)

### E. Attorneys' Fees And Service Award

Subject to Court approval, attorneys' fees are to be paid out of the Settlement Fund. (*Id.*, ¶¶ 84-88.) Under the Settlement Agreement, Class Counsel have agreed, with no consideration from Defendant, to limit their request for attorneys' fees to no more than 33% of the Settlement Fund, plus their reasonable litigation costs and expenses. (*Id.*, ¶ 84.) Plaintiff also intends to move for a Service Award for the named Plaintiff, subject to Court approval, of up to $12,500 for her numerous contributions to the Litigation, which include agreeing to serve as the putative class representative, participating in written discovery, producing documents to Defendants, being deposed twice, attending the settlement conference, reviewing the Settlement Agreement, and otherwise making herself available to Plaintiff's Counsel from this case's inception. (*Id.*, ¶ 86.) No clear sailing agreement exists in relation to either the Fee Award or the Service Award.

### F. Release of Liability

In exchange for the monetary and prospective relief described above, each Settlement Class Member who does not exclude themselves from the Settlement will be deemed to have released and forever discharged Defendants and the other "Released Parties" (e.g. Defendants' affiliates and related entities) from any "Released Claims" that, as defined more thoroughly in the

Settlement Agreement, include claims which relate to the claims in this Litigation or could have been brought in this Litigation. (*Id.,* ¶ 36.) Plaintiff, in her individual capacity, has also granted the Released Parties a general release of claims more germane to her. (*Id.,* ¶ 37.)

## IV.   <u>THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL</u>

The proposed Settlement provides substantial relief to the Settlement Class Members and represents a fair and reasonable resolution of this dispute. It thus warrants this Court's preliminary approval and permission for notice to be sent to the Settlement Class Members. As revised, Fed. R. Civ. P. 23 directs the Court at this stage to only determine whether it "will be likely" to grant final approval of the proposed Settlement as "fair, reasonable, and adequate," pursuant to Fed. R. Civ. P. 23(e)(2), and certifiable "for purposes of judgment on the proposal," pursuant to Fed. R. Civ. P. 23(e)(1)(B)(ii). The edits to Rule 23 mirror the well-established two-step process in this Circuit of performing a "preliminary" evaluation of the fairness of the settlement to determine whether notice is to be sent out, prior to the final fairness inquiry. Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38–39 (4th Ed. 2002); *Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re AT&T Mobility Wireless Data Servs. Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). Accordingly, the preliminary approval evaluation is not a final fairness hearing. Rather, it is an evaluation to determine whether there is reason to notify the class members of the proposed settlement and to proceed with a final fairness hearing. *Newberg*, § 11.25, at 38-39; *Armstrong*, 616 F.2d at 314. The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement based on the written submissions and informal presentation from the settling parties. *Manual for Complex Litigation,* § 21.632 (4th ed. 2004).

Because every settlement is a compromise, courts should not reject a settlement solely because it does not provide a complete victory. Parties to a settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T*, 270 F.R.D. at 347 (internal quotations and citations omitted). There is a strong judicial and public policy favoring the settlement of class action litigation, and such a settlement should be approved by the Court after inquiry into whether the settlement is "fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l*, 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).

A.    **The Court Will Likely Find That The Proposed Settlement Is Fair, Reasonable, And Adequate.**

As the amendments to Rule 23 direct, in determining whether to preliminarily approve a settlement, the Court must first evaluate where it is "likely" to finally determine that the settlement is fair, reasonable, and adequate. Under Rule 23, the factors in determining whether a settlement is fair, reasonable, and adequate include: (1) whether the class representative and class counsel have adequately represented the class; (2) whether the settlement was negotiated at arm's length; (3) the relief provided to the class versus the cost and risk of proceeding to trial, the method by which relief will be distributed to the class, and the proposed attorneys' fees award; and (4) whether the Settlement treats all Class members equally to one another. Fed. R. Civ. P. 23(e)(2). Application of these factors to this case demonstrates that the proposed Settlement is fair, reasonable, and adequate.

1. <u>The Settlement was reached only after extensive motion practice, discovery, and arm's-length negotiation</u>.

The first two factors under the amended Rule 23(e)(2) are intended to "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note. In determining whether these factors are satisfied, the Court may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note.

Here, the Parties engaged in fact discovery for over a year, requiring several joint requests for extensions of discovery deadlines, before agreeing to explore resolution on a class basis. (Dkts. 51, 58, 60, 65, 77.) The Parties responded to written discovery requests, produced substantial documents, and conducted extensive oral written discovery, including two depositions of Enterprise subsidiary employees in their personal capacities, two depositions of Defendants' Rule 30(b)(6) designees, and two depositions of Plaintiff. Despite meeting and conferring frequently on outstanding discovery, the Parties had several disputes they were unable to resolve amicably, leading to a Motion to Compel filed by Plaintiff and a Motion to Quash filed by Defendants. Plaintiff also conducted third-party discovery, including issuing subpoenas to an Enterprise subsidiary not named in this matter as well as to Kronos, Incorporated, the vendor that provided the timekeeping technology at issue in this case. Accordingly, Plaintiff and proposed Class Counsel had sufficient information about the facts of the Litigation to fairly weigh their prospects of success at trial versus the negotiated outcome provided by the Settlement such that the Court is likely to find that they adequately represented the Class.

It was not until the close of fact discovery that the Parties agreed to discuss the prospect of classwide resolution of this Litigation. To that end, the Parties sought a settlement conference

referral to Magistrate Judge Gabriel A. Fuentes. (Dkt. 85.) On July 13, 2022, Counsel for the Parties, Plaintiff, and Defendants' corporate representatives attended a settlement conference with Judge Fuentes, where the Parties reached an agreement in principle to resolve the Litigation on a classwide basis. For the next several months, the Parties continued to negotiate the contours of the instant Settlement, including the appropriate relief to be provided to the Class Members, as well as the scope of the release and details about the notice to be provided to the Settlement Class Members. This formal, arm's-length process underscores the fairness of the Settlement and the lack of any collusion between the Parties. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.")

        2.       <u>The relief provided by the Settlement is adequate and provides equal relief to all Settlement Class Members</u>.

The Court is also likely to find that the proposed Settlement satisfies Rule 23's requirement of providing adequate relief when weighed against the likely outcome of any trial on the merits. As the Seventh Circuit has found, this is the most important consideration in determining whether a Settlement should be approved. *Synfuel Techs, Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006). The Settlement in this case is an excellent result for the Settlement Class Members and provides significant monetary benefits to the Settlement Class, as every Settlement Class Member will receive an equal payment from a Settlement Fund totaling $504,968.75, less Court-approved fees and expenses. As such, Settlement Class Members can expect to receive several hundred dollars from the Settlement Fund, likely between $400-500. Because each Settlement Class Member will receive an equal share of the Settlement Fund, the proposed Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(2)(D).

While Plaintiff believes her BIPA claims against Defendants are strong, she is also aware that Defendants have denied her allegations and raised numerous legal defenses, many of which, if successful, could result in Plaintiff and the proposed Settlement Class Members receiving no payment whatsoever. For example, Defendants have produced BIPA-related consent forms signed by a significant proportion of the putative Settlement Class Members. (*See* Dkt. 58.) Moreover, Defendants have made it clear that they would challenge any efforts by Plaintiff to move for class certification. Furthermore, the state of the law with respect to BIPA violations has been evolving throughout the Litigation—and is still evolving. Indeed, two major decisions by the Illinois Supreme Court are forthcoming that will determine with finality which statute of limitations applies to BIPA claims, as well as when BIPA claims accrue. *See Tims v. Black Horse Carriers, Inc.,* Dkt. No. 127801 (argued on September 22, 2022); *Cothron v. White Castle System, Inc.,* Dkt. No. 128004 (argued on May 15, 2022). A defendant-friendly holding in either pending appeal could significantly shrink the putative class size in this case and result in Settlement Class Members receiving no compensation.

Taking these realities into account, and recognizing the risks involved in any litigation, the relief afforded by the Settlement represents an excellent result for the Settlement Class Members. The total amount of the Settlement Fund and the direct payments to Settlement Class Members are significant in light of the risks of ongoing litigation. If Defendants were to succeed on their defenses to liability against Plaintiff's individual claims, or otherwise prevail in opposing class certification, the Settlement Class Members would recover nothing.

Furthermore, any trial in this matter would likely be complex and expensive. In addition, any trial in this matter would not likely take place for at least another year. Prior to the Parties' settlement conference, the Parties were on the verge of briefing Plaintiff's Motion for Leave to

Issue Subpoena (Dkts. 79-80), expert discovery had yet to occur, and Plaintiff's motion for class certification and the Parties' summary judgment motions had not yet been filed. Even in the event that the Litigation reached trial, evidence and witnesses from several states would have to be assembled and organized. Given the complexity of the issues and the amount in controversy, the losing party would likely appeal both the decision(s) on the merits (at summary judgment and/or trial), as well as the decision(s) on class certification. As such, the immediate relief provided to the Settlement Class under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of continued litigation, trial, and appeal. Indeed, "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted). With this Settlement, Plaintiff and the Settlement Class Members will receive meaningful payments now, instead of years from now—or perhaps never. *See id.* at 582. In short, in the absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation that would result would be substantial.

Furthermore, the other factors to be considered under Rule 23(e)(2)(C) are also all satisfied here. As detailed above, the Parties have prepared an effective form and method of Notice that will make sure that Class Members receive direct notice informing them about the Settlement. *See supra* Section III (C–D); Fed. R. Civ. P. 23(e)(2)(C)(ii). In addition, Plaintiff's Counsel's anticipated attorneys' fees request – no more than 33% of the Settlement Fund – falls well within the range of attorney's fees awarded in other similar settlements, and will likely be found reasonable in light of the recovery achieved for the Class Members and the efforts undertaken by Plaintiff's Counsel in pursuing these claims on behalf of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(iii), *see also Bedford,* No. 20-cv-04574, Dkt. 32 (N.D. Ill. May 12, 2021) (Shah, J.)

(approving class counsel's fee request for 33.3% of the settlement fund in BIPA class settlement); *Quarles v. Pret A Manger (USA) Limited*, No. 20-cv-07179, Dkt. 53 (N.D. Ill. May 4, 2022) (Shah, J.) (approving class counsel fee request for 36% of the settlement fund in BIPA class settlement); *Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.,* No. 02-cv-1109, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action is not uncommon"). To the extent that any Settlement Class Members believe that the attorney's fees requested are not appropriate, they will have the opportunity to raise their concerns at the Final Approval Hearing. Plaintiff has also identified all agreements made in connection with the Settlement, which are solely limited to the terms contained in the Settlement Agreement filed herewith as Exhibit A. Fed. R. Civ. P. 23(e)(2)(C)(iv).

In sum, the lengthy duration of the Litigation; the extensive and often contentious investigation and discovery process; the excellent result for the Settlement Class in spite of the significant procedural and substantive hurdles faced by Plaintiff; and the participation of an experienced intermediary during the negotiation process are all testament to the fairness of the proposed Settlement. However, the Court need not rule on a blank slate as to the reasonableness of the Settlement. Similar class action settlements involving alleged violations of BIPA have received final approval in this District and elsewhere, including before the Court. *See, e.g.*, *Davis, et al., v. Heartland Employment Services, LLC,* No. 19-cv-00680, Dkt. 130 (N.D. Ill. Oct. 25, 2021) (Valderrama, J.) (approving BIPA employment class action settlement with a gross payment of $500 per class member); *Roach v. Walmart, Inc.,* No. 2019-CH-01107 (Cir. Ct. Cook Cnty., Ill. 2020) (approving BIPA employment class action settlement with a gross payment of $461.32 per class member); *Jones,* No. 19-cv-06736, Dkt. 53 (N.D. Ill., 2020) (Alonso, J.) (approving BIPA timekeeping class action settlement with a gross payment of $800 per class member); *Quarles,* No.

20-cv-7179, Dkt. 53 (N.D. Ill., 2022) (Shah, J.) (finally-approved BIPA class settlement resulted in gross recovery of $850 per class member).

Here, the Parties believe there are 715 Settlement Class Members. (Ex. A, ¶ 50(a).) Accordingly, from a gross fund perspective, each Settlement Class Member will receive a settlement payment of $706.25, which is well within the range of similar BIPA settlements. After deductions for settlement administration expenses, any Fee Award, and any Service Award, Settlement Class Members who do not exclude themselves will likely receive between $400 and $500, which is likely to be found as fair, reasonable, and adequate, and warrants the Court's preliminary approval.

**B.** **The Court Will Likely Find That The Proposed Settlement Class Meets All Requirements For Certification For Purposes Of Settlement Under Fed. R. Civ. P. 23.**

The proposed Settlement is not only likely to be found fair, reasonable, and adequate, but the proposed Settlement Class is also likely to be finally certified by the Court at the final approval hearing. As explained below, the Settlement Class meets all of the criteria for certification under Rule 23(a) and 23(b)(3).

1. <u>The Proposed Settlement Class meets all prerequisites to certification under Fed. R. Civ. P. 23(a).</u>

    i. *The proposed Settlement Class is ascertainable based on objective criteria.*

Although not explicitly required under Rule 23(a), some courts require that a proposed class be ascertainable. A class is ascertainable if "its members can be ascertained by reference to objective criteria[.]" *Mitchem v. Illinois Collection Serv., Inc.*, 271 F.R.D. 617, 619 (N.D. Ill. 2011) (internal citations omitted); 7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1760, at 121 (2d ed. 1987) (noting that the class must be defined in a way that is

administratively feasible for a court to determine whether a particular individual is a member). However, to meet the ascertainability requirement the Court "need not ascertain 'absent class members' actual identities' . . . [r]ather, 'it is enough that the class be ascertain*able*,' with class members to be identified during a claims administration process[.]" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) (citing *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012)) (emphasis in original).

Here, the proposed Settlement Class Members are readily ascertainable using Defendants' records. Indeed, each Settlement Class Member was employed by Defendant Enterprise Chicago or its affiliate, Enterprise Midwest. Using the records to be provided by Defendants, the Settlement Administrator will run the Class Members' addresses through the U.S. Postal Service's National Change of Address database and mail the Notice using the most current mailing address information. (Ex. A, ¶ 67(c).) For any Class Member whose Notice is returned as undeliverable without a forwarding address, the Settlement Administrator will promptly conduct a firm level skip trace and re-send the Notice to the address (if any) determined by the skip trace. (*Id.*) For any Class Member whose Notice is returned as undeliverable with a forwarding address, the Settlement Administrator will promptly re-mail the Notice using the forwarding address. (*Id.*)

Because membership in the proposed Class is easily determined for the vast majority of Settlement Class Members based on objective criteria and records that Defendants possess, the proposed Settlement Class is ascertainable. *See Birchmeier*, 302 F.R.D. at 248; *see also Boundas*, 280 F.R.D. at 418 (finding that a proposed class is ascertainable even if the actual "names and addresses" of the class members are not identified); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 661 (7th Cir. 2015), *cert. denied*, No. 15-549, 2016 WL 763259 (U.S. Feb. 29, 2016) (noting that

ascertainability focuses on the "adequacy of the class definition itself" and not on the "difficulty [in] identify[ing] particular members of the class").

*ii.     Numerosity*

The numerosity requirement of Rule 23(a)(1) is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no bright-line test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805-806 (N.D. Ill. 2008); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (stating that a class of forty or more is sufficiently numerous). A plaintiff generally need not demonstrate the exact number of class members but must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Here the proposed Settlement Class includes at least 715 individuals who are generally scattered throughout Illinois. (Ex. A, ¶ 50(a)). The Settlement Class is therefore undoubtedly numerous. *See Hinman*, 545 F. Supp. 2d at 806 (the court "may make common sense assumptions in determining numerosity"). Put differently, the estimated number of individuals in the Settlement Class, coupled with the fact that Settlement Class Members are disbursed throughout the state, renders joinder impracticable and supports a finding of numerosity. *See, e.g.*, *Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 517 (N.D. Ill. 2008).

*iii.     Commonality*

The second prerequisite of Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is met where the putative class members share a "common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the

validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality is often present where defendants have "engaged in standardized conduct toward members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Hinman*, 545 F. Supp. 2d at 806.

In this case, Plaintiff alleges that the Settlement Class Members' claims are nearly identical such that there are numerous common elements. Plaintiff and all other Settlement Class Members (who all worked for Defendants or their affiliates) assert the same claim—that Defendants violated the law through implementation of a biometric timekeeping system without complying with BIPA's requirements. Accordingly, the essential elements of each of the Settlement Class Members' claim are identical and arise out of the same, uniform set of facts. The resulting common questions of law and fact include, but are not limited to:

- Whether Plaintiff's and the Settlement Class Members' information collected through Defendants' timekeeping system constitutes biometric identifiers and/or biometric information under BIPA;

- Whether Defendants made available to the public a written policy that establishes a retention schedule and guidelines for destroying biometrics;

- Whether Defendants obtained a valid written release from Plaintiff and the Settlement Class Members before capturing, collecting, or otherwise obtaining their biometrics; and

- Whether Defendants disseminated Plaintiff's and the Settlement Class Members' biometrics to any third party without their informed consent.

"Commonality requires that there be at least one question of law or fact common to the class." *Barragan v. Evanger's Dog & Cat Food Co.,* 259 F.R.D. 330, 334 (N.D. Ill. 2009) (quoting *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992)). A common question may be shown where claims of individual members are based on the common application of a statute or where class members are aggrieved by the same or similar conduct. *Kurgan*, v. *Chiro One Wellness Ctrs.*

*LLC,* No. 10-cv-1899, 2014 WL 642092, at *6 (N.D. Ill. Feb. 19, 2014). Here, the sheer number and significance of the common questions are sufficient to meet the commonality requirement.

### iv. Typicality

The typicality prong of subsection 23(a)(3) requires that the class representative's claims be typical of the class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement focuses on whether the class representative's claims "have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596-97 (7th Cir. 1993). The claims of the named plaintiff must stem from the same course of conduct that gave rise to the claims of the class and must rest on the same legal theory. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *Hinman*, 545 F. Supp. 2d at 806. Typicality does not require claims to be "identical," and is generally "liberally construed." *Gasper v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

Plaintiff and the Settlement Class Members all allege they were required to "clock-in" and "clock-out" of work using a biometric timekeeping system while working for Defendants or their affiliates. Further, Plaintiff and the putative Settlement Class Members have all alleged the same injury: a violation of their rights protected under BIPA. As a result, Plaintiff and the proposed Settlement Class, if they proved their claims, would be entitled to identical statutory relief under BIPA. Because the Settlement Class Members assert identical claims based on the same legal theory, the same facts, and the same course of conduct by Defendants, and they seek redress for the same injury, Plaintiff's claim is typical of the Settlement Class she seeks to represent.

### v. Adequacy

The final subsection of Rule 23(a) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to

uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). To satisfy the adequacy requirement, class representatives must show that: (1) their claims are not antagonistic or in conflict with those of the proposed class, (2) they have sufficient interest in the outcome of the case, and (3) they are represented by experienced and competent counsel. *Hinman*, 545 F. Supp. 2d at 807. It is persuasive evidence of the adequacy of proposed class counsel where they have been found adequate to serve as class counsel in other cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Here, Plaintiff's interests are representative of and consistent with the interests of the proposed Settlement Class Members—all seek relief under BIPA for Defendants' implementation of a biometric timekeeping system to track their hours at work. Plaintiff's pursuit of this matter, including her willingness to produce documents, answer interrogatories, and to be deposed twice, as well as her attendance at the settlement conference, demonstrates that she has been and will remain a zealous advocate for the Settlement Class. Plaintiff has no interests that are antagonistic to the interests of the putative Settlement Class Members. Rather, her primary interest is the same, namely, to obtain relief under BIPA.

Plaintiff is also represented by experienced, competent counsel. proposed Class Counsel have regularly engaged in complex class litigation and have extensive experience in class action lawsuits involving technology and, in particular, BIPA. proposed Class Counsel have been appointed as class counsel in numerous complex consumer class actions, including many BIPA cases. (*See* Declaration of Evan M. Meyers, attached hereto as <u>Exhibit B</u>, at ¶¶ 8-9.) As such, proposed Class Counsel are preeminently qualified to assess the fairness and reasonableness of the Settlement reached in this case.

2.      The Proposed Settlement Class Is Certifiable Under Fed. R. Civ. P.
        23(b)(3).

A class is certifiable under Rule 23(b)(3) where "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

                    i.      *Common questions predominate within the Settlement Class.*

The predominance inquiry focuses on whether a proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. To satisfy the predominance requirement of Rule 23(b)(3), "each class member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to the repetitive individual litigation of the same question." *Lemon v. Int'l Union of Operating Eng's.*, 216 F.3d 577, 581 (7th Cir. 2000). While the common issues must predominate, they need not be exclusive. *Radamanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill. 2003). "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (internal quotation marks omitted). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620.

In this case, common questions predominate because all of the Settlement Class Members were subject to the same biometric timekeeping system in the course of their employment with Defendants or Defendants' affiliates, and the Settlement Class Members all seek redress under the same statute: BIPA. Indeed, as to the biometric timekeeping system, discovery has shown that the

Settlement Class Members' employers utilized the same technology to track each of the Settlement Class Members' hours at work. As such, the elements of any given Settlement Class Member's claim will be based on the same classwide proof applicable to other Settlement Class Members within the same class. *Golon v. Ohio Savs. Bank*, 98 C 7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999) (Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, classwide basis … [since s]uch proof obviates the need to examine each class member's individual position.").

> ii.     *A class action is the most efficient way of adjudicating the putative Settlement Class Members' claims and is superior to the alternative of either a multitude of individual lawsuits or no individual lawsuits at all.*

In this instance, a class action is superior to any other method available to fairly and efficiently adjudicate the Settlement Class Members' claims. Rule 23(b)(3) lists four factors that the Court should consider in taking into account whether a class action is superior to other methods of adjudicating this action: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23 (b)(3)(A)-(D). To determine whether a class action is a superior method, courts often look to whether it is an "efficient use of both judicial and party resources." *Hinman,* 545 F. Supp. 2d at 807. The superiority requirement is generally satisfied where class members have uniform claims governed by the same law. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). Courts should also consider the "improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture*, 503 F.2d 1161, 1164-65 (7th Cir. 1974).

Because all of the Settlement Class Members' claims are brought pursuant to the same statute here, this case is particularly suited for class treatment. Further, many putative Settlement Class Members may not have access to competent counsel willing to invest the time and resources necessary to prosecute their claims. This is evidenced by the fact that there are no parallel or related cases currently proceeding against Defendants under BIPA. Because the Settlement Class Members have little incentive to bring individual actions to recover the relatively modest statutory damages available under BIPA, they are unlikely to have an interest in individually controlling the prosecution of separate actions. It is therefore unlikely that, absent a class action, many Settlement Class Members would be able to obtain relief through individual lawsuits. As such, adjudicating the Settlement Class Members' claims in a single proceeding will "save[] the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (holding that a class action is superior where it allows the plaintiffs to pool claims that would be uneconomical to litigate individually).

Moreover, because this Litigation will end if the Parties' Settlement Agreement is approved, the Court need not be concerned with issues of manageability relating to trial. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *4 (N.D. Ill. Feb. 28, 2012) (*quoting Amchem*, 521 U.S. at 622 ("settlement is a factor in the calculus" in determining whether certification is proper)). Accordingly, a class action is the superior method of adjudicating this action.

*The proposed form and method of Notice satisfies Due Process and the requirements of Fed. R. Civ. P. 23.*

When a class is certified through settlement, Due Process and Rule 23 require that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e) (1); *In re Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016). Where, as here, a class is certified pursuant to Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) ("[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort"). The notice must contain information in plain, easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see In re AT&T*, 270 F.R.D. at 352.

As discussed above, the Parties have agreed to an effective manner and method of distributing Notice that more than satisfies the requirements of Due Process and Rule 23. The Settlement Agreement contemplates direct notice to reach potential Settlement Class Members at their home address. Under the notice plan, the Settlement Administrator will send direct notice of the Settlement via U.S. Mail to the Settlement Class Members. (Ex. A, ¶ 67.) Before sending Notice, the Settlement Administrator will run the Class Members' addresses through the U.S. Postal Service's National Change of Address database and mail the Notice using the most current mailing address information. (*Id.,* ¶ 67(c).) For any Class Member whose Notice is returned as undeliverable without a forwarding address, the Settlement Administrator will promptly conduct a firm level skip trace and re-send the Notice to the address (if any) determined by the skip trace. (*Id.*) For any Class Member whose Notice is returned as undeliverable with a forwarding address,

the Settlement Administrator will promptly re-mail the Notice using the forwarding address. (*Id.*) Additionally, the Settlement Administrator will establish a website containing relevant court documents, notices, and a list of answers to frequently asked questions. (*Id.,* ¶ 42.) In accordance with Rule 23(e)(4), the notices will inform Settlement Class Members of their right to object or exclude themselves from the Settlement and the process and deadlines for doing so. (*Id.,* ¶ 67(a).)

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days from the date of this filing, Defendants will send required notice to the appropriate government entities. 28 U.S.C § 1715(b). Because the proposed notice plan effectuates direct notice to the vast majority of Class Members and fully apprises class members of their rights, it comports with the requirements of Due Process and Rule 23 and should be approved.

### iv. *Plaintiff's Counsel should be appointed Class Counsel.*

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation, and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As described in detail above, proposed Class Counsel have diligently investigated Plaintiff's BIPA claims and the feasibility of class certification, have committed extensive efforts to negotiating and executing this Settlement and the related papers, and have devoted and will continue to devote substantial time and resources to this Litigation. proposed Class Counsel have extensive experience with similar class action litigation, including scores of BIPA cases, and have been appointed class counsel in many class actions, including numerous BIPA cases. (Meyers

Decl. at ¶ 8-13.) As such, proposed Class Counsel have an in-depth knowledge of the laws applicable to the Settlement Class Members' claims and certification of the Settlement Class. (*Id.*) Accordingly, the Court should appoint Plaintiff's Counsel to serve as Class Counsel for the proposed Settlement Class pursuant to Rule 23(g).

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (1) granting preliminary approval of the proposed Settlement; (2) appointing Plaintiff Dawon Wordlaw as Class Representative; (3) appointing Myles McGuire, Evan M. Meyers, Timothy P. Kingsbury and Brendan Duffner of McGuire Law, P.C. as Class Counsel; (4) approving the form and content of the proposed Notice and ordering that it be effectuated; (5) scheduling a final approval hearing; and (6) providing such other and further relief as the Court deems reasonable and just.

Dated: December 30, 2022                        Respectfully submitted,

DAWON WORDLAW, individually and on behalf of a class of similarly situated individuals

By: /s/ *Brendan Duffner*
*One of Plaintiff's Attorneys*

Myles McGuire
Evan M. Meyers
Timothy P. Kingsbury
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
tkingsbury@mcgpc.com
bduffner@mcgpc.com

*Counsel for Plaintiff and the Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2022, I electronically filed the foregoing *Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/      *Brendan Duffner*