**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DAWON A. WORDLAW, on behalf of herself
and all others similarly situated,

                Plaintiff,

     v.

ENTERPRISE LEASING COMPANY OF
CHICAGO, LLC; ENTERPRISE HOLDINGS,
INC.,

                Defendants.

Case No. 20-cv-03200

Hon. Manish S. Shah

Hon. Magistrate Gabriel A. Fuentes

**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD**

Myles McGuire
Evan M. Meyers
Timothy P. Kingsbury
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
tkingsbury@mcgpc.com
bduffner@mcgpc.com

*Counsel for Plaintiff and Class Counsel*

### TABLE OF CONTENTS

I.   INTRODUCTION .................................................................1

II.  BACKGROUND ...................................................................2

    A.  The Illinois Biometric Information Privacy Act .....................2

    B.  History of the Litigation ................................................3

    C.  Settlement Negotiations ................................................5

III. RELIEF FOR THE SETTLEMENT CLASS MEMBERS .........5

    A.  Under the Settlement's Notice Plan, The Settlement Class Members Have
    Been Effectively Notified Of The Settlement ..........................5

    B.  Monetary Relief ...........................................................6

    C.  Non-Monetary Relief ...................................................6

IV.  DISCUSSION ......................................................................7

    A.  Under The Percentage-Of-The-Fund Method For Calculating Attorneys'
    Fees, Class Counsel's Requested Fees Are Reasonable ............9

        1.  Class Counsel's retainer agreement with Plaintiff contemplates the
        requested fee award ................................................10

        2.  Class Counsel's requested fee award is in line with, or less than,
        the amount regularly awarded in BIPA class settlements in this District.......11

        3.  The risks of non-payment associated with this litigation further
        justify a 33% fee award ............................................12

        4.  The benefits obtained for the Settlement Class Members further support
        a 33% fee award ....................................................12

    B.  The Court Should Also Award Class Counsel's Requested Reimbursable
    Litigation Expenses ......................................................14

    C.  The Agreed-Upon Service Award For Plaintiff Is Reasonable And
    Should Be Approved .....................................................16

V.   CONCLUSION ....................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alvarado v. Int'l Laser Prods., Inc.*,
   No. 18-cv-7756, Dkt. 70 (N.D. Ill. Jan. 24, 2020) ..................................................11

*Bedford v. Lifespace Communities, Inc.*,
   No. 20-cv-04574, Dkt. 31 (N.D. Ill. May 12, 2021) ...............................................11

*Beesley v. Int'l Paper Co.*,
   No. 06-cv-703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ....................................14

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .........................................................................................5, 9, 14

*Bryant v. Compass Grp. USA, Inc.*,
   No. 19-cv-08402, Dkt. 92 (N.D. Ill. Feb. 16, 2022)........................................... 11-12

*Bryant v. Loews Chicago Hotel, Inc.*,
   No. 1:19-cv-03195, Dkt. No. 77 (N.D. Ill. Oct. 30, 2020) ........................................9

*City of Greenville v. Syngenta Crop Prot.*, Inc.,
   904 F. Supp. 2d 902 (S.D. Ill. 2012) .....................................................................15

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) .................................................................................7

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
   No. 18-cv-07018, Dkt. 57 (N.D. Ill. Sept. 10, 2020)...............................................11

*Craftwood Lumber Co. v. Interline Brands*,
   No. 11-cv-4462, 2015 WL 2147679 (N.D. Ill. 2015)...............................................17

*Cruz v. Jame Roll Form Products*,
   No. 21-CH-04132 (Cir. Ct. Cook Cnty., Ill. 2023) ..................................................14

*Davis, et al., v. Heartland Employment Services, LLC*,
   No. 19-cv-00680, Dkt. 130 (N.D. Ill. Oct. 25, 2021)...............................................14

*Dixon v. Smith Senior Living*,
   No. 17-cv-08033, Dkt. 103 (N.D. Ill. Aug. 20, 2019)...............................................9

*Florin v. Nationsbank of Ga., N.A.*,
   34 F.3d 560 (7th Cir. 1994) ................................................................................. 7-8

*Gaskill v. Gordon*,
   942 F. Supp. 382 (N.D. Ill 1996)......................................................................... 8-9

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) .................................................................................11

*In re Amino Acid Lysine Antitrust Litig.*,
No. 95-cv-7679, 1996 WL 197671 (N.D. Ill. Apr. 22, 1996) ....................................................8

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
792 F. Supp. 2d 1028 (N.D. Ill. 2011)..............................................................................9, 12

*In re Capital One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015)............................................................................ 7, 10-11

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ....................................................................................................24

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) ............................................................................... 9-10, 12, 14

*In re Synthroid Mktg. Litig.*,
325 F.3d 974 (7th Cir. 2003) .....................................................................................................8

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) ...........................................................................................8

*Kaplan v. Houlihan Smith & Co.*,
No. 12 C 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014) ............................................15

*Kolinek v. Walgreen Co.*, -
311 F.R.D. 483 (N.D. Ill. 2015) ............................................................................ 7-8, 11, 13

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ...................................................................................................11

*Matter of Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .....................................................................................................8

*Murray et al v. Bill Me Later, Inc.*,
No. 12-cv-04789, Dkt. 78 (N.D. Ill. 2014) ...........................................................................17

*Neals v. ParTech, Inc.*,
No. 19-cv-05660, Dkt. 140 (N.D. Ill. July 20, 2022) ..........................................................11

*O'Sullivan v. WAM Holdings, Inc. et al.*,
No. 19-CH-11575 (Cir. Ct. Cook Cnty., Ill. 2021) .............................................................14

*Peatry v. Bimbo Bakeries USA, Inc.*,
No. 19-cv-2942, Dkt. 101 (N.D. Ill. Jan. 12, 2022) ............................................................11

*Quarles v. Pret A Manger*,
Case No. 20-cv-7179, Dkt. 53 (N.D. Ill. May 4, 2022)............................................................11

*Rapai v. Hyatt Corp.*,
No. 17-CH-14483 (Cir. Ct. Cook County, Ill. 2022) ..........................................................17

*Roach v. Walmart, Inc.*,
No. 2019-CH-01107 (Cir. Ct. Cook Cnty., Ill. 2020) .........................................................14

iii

*Rogers v. CSX Intermodal Terminal, Inc.*,
   No. 19-CH-04168 (Cir. Ct. Cook County, Ill. 2022) ............................................17

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................16

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ...............................................................................10

*Skelton v. Gen. Motors Corp.*,
   860 F.2d 250 (7th Cir. 1988) ...............................................................................10

*Spano v. Boeing Co.*,
   No. 06-cv-743, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ..........................12, 16

*Spicer v. Chicago Bd. Options Exch., Inc.*,
   844 F. Supp. 1226 (N.D. Ill. 1993) .................................................................. 14-15

*Stiles v. Specialty Promotions, Inc.*,
   No. 20-CH-03766 (Cir. Ct. Cook Cnty., Ill. 2022) ...............................................14

*Sutton v. Bernard*,
   504 F.3d 688 (7th Cir. 2007) .......................................................................6, 9, 12

*Taubenfeld v. AON Corp.*,
   415 F.3d 597 (7th Cir. 2005) .........................................................................10, 12

*Thome v. NOVAtime Tech., Inc.*,
   No. 19-cv-6265, Dkt. 90 (N.D. Ill. Mar. 8, 2021) .................................................12

*Williams v. Gen. Elec. Capital Auto Lease*,
   No. 94-cv-7410, 1995 WL 765266 (N.D. Ill. Dec. 6, 1995) ....................................7

*Wright v. Nationstar Mortg. LLC*,
   No. 14-cv-10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ..............................7

**Statutes**

740 ILCS 14/1 ...............................................................................................................1

740 ILCS 14/15 .............................................................................................................3

Fed. R. Civ. P. 23 ......................................................................................................7, 14

**Other Sources**

Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs:
An Empirical Study, 53 UCLA L. Rev. 1303 (2006) .................................................17

## I.    **INTRODUCTION**

On January 3, 2023, the Court preliminarily approved the  Settlement Agreement reached between Plaintiff Dawon Wordlaw ("Plaintiff") and Defendants Enterprise Leasing Company of Chicago, LLC and Enterprise Holdings, Inc. ("Defendants"),[1] bringing to a close more than 30 months of litigation in this putative class action brought under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* Notice of the Settlement was distributed to the Settlement Class Members on February 7, 2023, and as of the filing of this Motion, <u>no</u> Settlement Class Members have objected to the Settlement and <u>no</u> Settlement Class Members have requested exclusion.

The Settlement Class Members' overwhelming support for the Settlement is unsurprising considering that the Settlement achieved by Class Counsel in this case is an outstanding result for them. The Parties' Agreement establishes a Settlement Fund of $504,968.75 from which the Settlement Class Members will be compensated on an equal, *pro rata* basis without having to submit claims or take any other action. In addition to the substantial financial benefit to the Settlement Class Members, the Settlement also provides significant non-monetary relief designed to prevent the recurrence of the allegedly unlawful use of their biometrics at issue in this case.

With this Motion, Class Counsel request a fee of 33% of the total Settlement Fund, amounting to $166,639.69, plus their litigation expenses, as well as a Service Award in the amount of $12,500 for Plaintiff as the Class Representative. As explained in detail below, Class Counsel's requested fee award is justified given the excellent monetary and non-monetary relief provided under the Settlement, is consistent with Seventh Circuit law and fee awards granted in BIPA cases

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as those terms are used in the Settlement Agreement ("Agreement"), which is attached as Exhibit A to Plaintiff's previously filed Motion for Preliminary Approval (Dkt. 106-1).

in this District, and is also reasonable given the time and costs Class Counsel have committed to resolving this litigation for the benefit of the Settlement Class Members. Plaintiff's requested Service Award is amply justified by her extraordinary efforts on behalf of the Class, including stepping forward to assert her claims on a class basis, sitting for multiple depositions, producing her own personal communications in discovery, and ultimately participating in the settlement conference with Hon. Gabriel Fuentes that produced the Settlement. Accordingly, Plaintiff and Class Counsel respectfully request that the Court approve attorneys' fees and reasonable expenses of $173,036.27 and a Service Award of $12,500.00 to Plaintiff.

## II.    BACKGROUND

### A.    The Illinois Biometric Information Privacy Act

BIPA is an Illinois statute enacted in 2008 that provides individuals with certain protections for their biometric information. To effectuate its purpose, BIPA requires private entities that seek to use biometric identifiers (e.g., fingerprints and handprints) and biometric information (any information gathered from a biometric identifier which is used to identify an individual) to:

(1)    inform the person whose biometrics are to be collected in writing that their biometrics will be collected or stored;

(2)    inform the person whose biometrics are to be collected in writing of the specific purpose and the length of term for which such biometrics are being collected, stored and used;

(3)    receive a written release from the person whose biometrics are to be collected allowing the capture and collection of their biometrics;

(4)    receive consent before disclosing or otherwise disseminating the person's biometrics; and

> (4)     make publicly available retention schedule and guidelines for permanently
>
> destroying the collected biometrics. 740 ILCS 14/15.

BIPA was enacted in large part to protect individuals' biometrics, provide them with a means of enforcing their statutory rights, and regulate the practice of collecting, using and disseminating such sensitive information.

### B.     History Of The Litigation

On April 3, 2020, Plaintiff filed a class action lawsuit in the Circuit Court of Cook County, Illinois, Chancery Division against Defendants alleging violations of BIPA. Plaintiff alleges that while she was working for Defendant Enterprise Leasing Company of Chicago, LLC in 2016, Defendants implemented a biometrically-enabled timekeeping system to monitor Plaintiff's and the Settlement Class Members' work hours. (*See* First Amended Class Action Complaint ("Complaint" or "FAC"), Dkt. 21, ¶ 25.) Plaintiff alleges she used her fingerprint to "clock-in" and "clock-out" using this system until Plaintiff's employment relationship with Enterprise Leasing Company of Chicago, LLC ended in March 2019. (*Id.,* ¶ 27.)

On May 29, 2020, Defendant Enterprise Leasing Company of Chicago, LLC removed the case to this Court, where it was assigned to the Honorable Manish S. Shah. On August 31, 2020, Defendants moved to dismiss Plaintiff's initial Complaint. On September 21, 2020, Plaintiff filed her First Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(1). In the FAC, Plaintiff alleges that, prior to collecting her biometrics, Defendants did not inform Plaintiff in writing that her biometrics were being collected, stored, used, or disseminated, or provide her with any disclosures relating to their collection, storage, or dissemination of her biometrics. (*Id.,* ¶ 29.) Plaintiff also alleges that Defendants did not seek, and Plaintiff never provided, any written consent relating to the collection, capture, or use of her biometrics. (*Id.,* ¶ 30.) Plaintiff further alleges that, prior to

taking Plaintiff's biometrics, Defendants did not make publicly available any written biometric retention schedule or policy, nor did Defendants disclose any guidelines for permanently destroying her collected biometrics. (*Id.,* ¶ 31.) Lastly, Plaintiff alleges that Defendants did not obtain consent from Plaintiff to disseminate her biometrics to third parties, including any data storage or payroll processing vendors. (*Id.,* ¶ 32.)

On October 13, 2020, Defendants moved to dismiss Plaintiff's FAC under Fed. R. Civ. P. 12(b)(6), arguing that: (i) Plaintiff failed to allege facts supporting the inclusion of Enterprise Holdings, Inc. in this lawsuit; (ii) Plaintiff engaged in improper "group pleading;" (iii) Plaintiff failed to state any claim for violation of BIPA Sections 15(a), (b), or (d); (iv) Plaintiff failed to plead recklessness or intent; and (v) Plaintiff's claims were preempted by the Illinois Workers' Compensation Act. (Dkts. 25-26.) On December 21, 2020, following full briefing, the Court issued a Memorandum Opinion and Order denying Defendants' Motion to Dismiss. (Dkt. 30.) On January 20, 2021, Defendants filed a Motion for Reconsideration. (Dkts. 33-34.) Defendants also simultaneously filed a Motion to Amend to Certify Questions for Appeal and Stay Proceedings. (Dkts. 35-36.) On January 28, 2021, the Court denied both motions. (Dkt. 38.)

On February 2, 2021, Defendants filed their Answer to Plaintiff's FAC, and on February 3, 2021, the Court entered a discovery schedule. (Dkts. 39-41.) Over the course of the next year, the Parties engaged in substantial discovery relevant to both class certification issues and the merits of Plaintiff's individual claims. Defendants produced thousands of documents, including hundreds of purported biometric consent forms signed by putative Class members. Plaintiff took depositions of two individuals in their personal capacities as well as two depositions of Defendants' Rule 30(b)(6) designees, and Defendants took two depositions of Plaintiff. While the Parties met and conferred regularly in an attempt to resolve numerous disputes, Plaintiff filed a Motion to Compel

(Dkt. 56), and Defendants filed a Motion to Quash Plaintiff's subpoena to third party Kronos Incorporated (Dkt. 66), the provider of the timekeeping technology at issue in this case. At the Parties' request, the Court extended the fact discovery cutoff several times. (Dkts. 51, 58, 60, 65, 77.) Fact discovery closed on April 29, 2022. (Dkt. 77.)

### C. Settlement Negotiations

On May 23, 2022, the Parties requested a referral to Magistrate Judge Gabriel A. Fuentes for a settlement conference. (Dkt. 85.) On July 13, 2022, the Parties attended an all-day remote settlement conference with Judge Fuentes. (Dkt. 92.) Counsel for the Parties, Plaintiff, and a representative for Defendants were in attendance. With the assistance of Judge Fuentes, the Parties reached a settlement in principle by which the Parties agreed to resolve all matters pertaining to, arising from, and associated with the Litigation, including all claims Plaintiff and Settlement Class Members have or may have had against Defendants and any Released Parties, as those terms are defined in the Settlement Agreement. (*Id.*) In the more than four months following the formal settlement conference, the Parties engaged in further negotiations to come to terms regarding the key elements of the Settlement, including the relief to be provided to the Class Members, the scope of the release, and the form and method of Notice to be provided to the Settlement Class Members, and ultimately agreed on a final form of the Settlement Agreement which this Court preliminarily approved on January 3, 2023 (Dkts. 108–109.)

## III. RELIEF FOR THE SETTLEMENT CLASS MEMBERS

### A. Under The Settlement's Notice Plan, The Settlement Class Members Have Been Effectively Notified Of The Settlement.

Under the Settlement Agreement's notice plan, which has already gone into effect, direct notice has been provided by U.S. Mail to the Settlement Class Members (*See* Declaration of Evan M. Meyers ("Meyers Decl."), attached hereto as Exhibit A, ¶ 18.) In addition, the Settlement

Website is live, where the Settlement Class Members can learn about the case and the Settlement, review the full Settlement Agreement and a detailed Long Form Notice, and obtain answers to frequently asked questions. Settlement Class Members can also request exclusion from the Settlement via the Settlement Website if they so choose. To date, of the hundreds of individuals who received notice by U.S. Mail, none have objected to, or elected to exclude themselves from, the Settlement. (*Id.*)

### B.    Monetary Relief

As detailed in Plaintiff's preliminary approval filings, the Settlement provides substantial monetary relief to the Settlement Class Members. As a result of Class Counsel's efforts, Defendants have agreed to establish a non-reversionary Settlement Fund in the amount of $504,968.75. (Settlement Agreement, Dkt. 106-1, ¶ 50(a)). Following subtractions for the costs of notice and administration, court awarded attorneys' fees and costs, and a Service Award to Plaintiff, the Settlement Fund will be distributed in full to Settlement Class Members on a *pro rata* basis with no need to submit a claim. Class Counsel expect that each Settlement Class Member will each receive between $400 and $500, a significant amount that is well within the range of previously-approved BIPA settlements.

### C.    Non-Monetary Relief

The Settlement also provides Settlement Class Members with non-monetary relief whereby Defendant Enterprise Chicago will revise its existing biometric consent policy to contain language identifying both Enterprise Holdings, Inc. and Enterprise Chicago's relevant timekeeping vendors. (*Id.*, ¶ 55.) This relief will benefit not just the Settlement Class Members, but future employees of Defendant Enterprise Leasing Company of Chicago, LLC, as well.

## IV.   <u>DISCUSSION</u>

Federal Rule of Civil Procedure 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Seventh Circuit recognizes "two approaches used to calculate attorneys' fees: the lodestar method . . . and the percentage-of-recovery method . . . ." *Wright v. Nationstar Mortg. LLC*, No. 14-cv-10457, 2016 WL 4505169, at *14 (N.D. Ill. Aug. 29, 2016) (citing *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 562 (7th Cir. 1994). Generally, "a district judge has discretion to use either method, depending on the particular circumstances of the case." *Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998).

In class actions such as this, where the defendant creates a common fund that is distributed in full, the percentage-of-the-fund method is "the normal practice," because "such an approach is more efficient for the court and more likely to yield an accurate approximation of the market rate." *In re Capital One Telephone Consumer Protection Act Litig.*, 80 F. Supp. 3d 781, 794–95 (N.D. Ill. 2015); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500–01 (N.D. Ill. 2015) ("The Court agrees with [class] counsel that the fee award in this case should be calculated based on a percentage-of-the-fund method . . . because fee arrangements based on the lodestar method require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of [many] million lightly-injured plaintiffs likely would not be interested in doing"); *Williams v. Gen. Elec. Capital Auto Lease*, No. 94-cv-7410, 1995 WL 765266, *9 (N.D. Ill. Dec. 6, 1995) ("The approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class") (collecting cases). Moreover, the percentage-of-the-fund method is the best method for recreating the market for BIPA class action attorneys, because BIPA

attorneys generally work on contingency and are not paid by lodestar.[2]

One of the primary advantages the percentage of the fund approach has over the lodestar approach—and a substantial reason why percentage of the fund more accurately represents the "market rate"—is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek*, 311 F.R.D. at 501. The percentage of the fund approach, by contrast, promotes early resolution and eliminates the incentive for plaintiffs' attorneys to inflate their billable hours by engaging in wasteful litigation. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979 (7th Cir. 2003). By limiting attorneys' fees to a percentage of the common fund, "courts can expect attorneys to make cost efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *see also In re Amino Acid Lysine Antitrust Litig.*, No. 95-cv-7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) (explaining "growing recognition that in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

Along that line, the percentage of the fund approach preserves judicial resources by sparing the Court the cumbersome task of reviewing complicated and lengthy billing records. *Florin,* 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"). As one seminal case put it:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter

---

[2] Class Counsel submit that their lodestars accrued over this case's nearly three-year lifespan exceed the $166,639.69 sought herein. To the extent this Court nonetheless has any concerns as to the application of the percentage-of-the-recovery approach in awarding attorneys' fees and wishes to conduct a lodestar analysis, Class Counsel will submit their lodestars.

> how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill*, 942 F. Supp. at 386 (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable"). For this reason, courts in this District routinely apply the percentage of the common fund method and have noted the advantages of this approach. *See, e.g., In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *see also Bryant v. Loews Chicago Hotel, Inc.*, No. 1:19-cv-03195, Dkt. No. 77 (N.D. Ill. Oct. 30, 2020); *Dixon v. Smith Senior Living*, No. 17-cv-08033, Dkt. No. 103 (N.D. Ill. Aug. 20, 2019).

Here, Class Counsel's requested fee award is $166,639.69, which represents 33% of the Settlement Fund. As explained in detail below, this fee award is within the market rate for settlements of this size, is within or less than the amount of fees approved in other similar BIPA class action settlements finally-approved in this District, including by this Court, and is fair and reasonable in light of the work performed and the recovery secured on behalf of the Settlement Class Members.

## A. Under The Percentage-Of-The-Fund Method For Calculating Attorneys' Fees, Class Counsel's Requested Fees Are Reasonable.

When a representative party has created a "common fund" for, or has conferred a "substantial benefit" upon, an identifiable class, counsel for that party is entitled to an award of

attorneys' fees from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund . . . is entitled to a reasonable attorneys' fee from the fund as a whole."); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 717 (7th Cir. 2001) (hereinafter "*Synthroid I*"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007). This rule "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton*, 504 F.3d at 691–92 (citing *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)).

In determining an appropriate award in a common fund case, a court must endeavor to award "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Synthroid I*, 264 F.3d at 718. In other words, the percentage awarded should "approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (citations omitted); *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (holding that a court should attempt to "recreate the market" and determine what the parties would have agreed to ex ante (citation omitted)). The Seventh Circuit has articulated three factors to help district courts estimate the appropriate market fee: "(1) actual fee contracts between plaintiffs and their attorneys; (2) data from similar cases where fees were privately negotiated; and (3) information from class-counsel auctions." *Capital One*, 80 F. Supp. 3d at 796 (citing *Synthroid I*, 264 F.3d at 719); *see Taubenfeld*, 415 F.3d at 599. An application of these factors in this case shows that Class Counsel's requested fees are reasonable and well-earned.

### 1. Class Counsel's retainer agreement with Plaintiff contemplates the requested fee award.

The first factor courts consider in determining the percentage of the fund that the class and class counsel would have agreed to *ex ante* is the actual agreed-upon amount in class counsel's

retainer agreement. *Capital One*, 80 F. Supp. 3d at 796 (citing *Synthroid I*, 264 F.3d at 719). Here, Class Counsel's retainer agreement with Plaintiff provides for a contingency fee of up to 40% of all monies recovered, plus costs and expenses. (Meyers Decl. ¶ 21.) Given the $504,968.75 Settlement Fund here, Plaintiff's agreement with Class Counsel contemplates a fee award of at least $200,000.00, in addition to the recovery of all costs and expenses. Here, the fee percentage requested, 33% of the Settlement Fund, is within the range of fees previously awarded in the Seventh Circuit. See, e.g., *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("The typical contingent fee is between 33 and 40 percent"); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial). And the agreement's percentage is in line with what Class Counsel are actually seeking, as Class Counsel's requested fee award amounts to 33% of the Settlement Fund. Accordingly, the retainer agreement with Plaintiff supports a finding that the Settlement Class Members would have agreed to Class Counsel's requested fee in an *ex ante* negotiation. *See Capital One*, 80 F. Supp. 3d at 796; *see also Kolinek*, 311 F.R.D. at 500.

### 2. Class Counsel's requested fee award is in line with, or less than, the amount regularly awarded in BIPA class settlements in this District.

The Court can confidently find that a hypothetical *ex ante* negotiation would have resulted in at least the 33% Class Counsel now seek; indeed, in similar BIPA cases, courts in this District, including this Court, have routinely awarded at least 33% of the net settlement fund. *See, e.g., Quarles v. Pret A Manger*, Case No. 20-cv-7179, Dkt. 53 (N.D. Ill. May 4, 2022) (Shah, J.) (awarding class counsel 36% of settlement fund in BIPA class action plus litigation expenses); *Bedford v. Lifespace Communities, Inc.*, No. 20-cv-04574, Dkt. 31 (N.D. Ill. May 12, 2021) (Shah, J.) (awarding class counsel 33.33% of fund); *see also*, *e.g.*, *Alvarado v. Int'l Laser Prods., Inc.*,

No. 18-cv-7756, Dkt. 70 (N.D. Ill. Jan. 24, 2020) (Pallmeyer, J.) (awarding class counsel in BIPA class settlement 35% of the settlement fund); *Neals v. ParTech, Inc.*, No. 19-cv-05660, Dkt. 140 (N.D. Ill. July 20, 2022) (Valderrama, J.) (same); *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19-cv-2942, Dkt. 101 (N.D. Ill. Jan. 12, 2022) (Ellis, J.) (same); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 18-cv-07018, Dkt. 57 (N.D. Ill. Sept. 10, 2020) (Pacold, J.) (same); *Bryant v. Compass Grp. USA, Inc.*, No. 19-cv-08402, Dkt. 92 (N.D. Ill. Feb. 16, 2022) (Kendall, J.) (awarding 33.3% of common fund in BIPA class settlement); *Thome v. NOVAtime Tech., Inc.*, No. 19-cv-6265, Dkt. 90 (N.D. Ill. Mar. 8, 2021) (Kennelly, J.) (same).

Accordingly, Class Counsel's fee request here is appropriate because any hypothetical *ex ante* negotiation would have resulted in an agreement of at least 33% of any recovery.

### 3. The risks of non-payment associated with this litigation further justify a 33% fee award.

The reasonableness of the requested fee award is further bolstered by the significant risk of non-payment Class Counsel faced at the outset of this litigation. *See Taubenfeld*, 415 F.3d at 600 (approving district court's reliance on this factor in evaluating attorneys' fees); *Synthroid I*, 264 F.3d at 718 (court should "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers … at the outset of the case (that is, when the risk of loss still existed)"). By taking this case on a contingency fee basis, Class Counsel assumed the risk they would receive no payment for their services. *See Sutton*, 504 F.3d at 693-94 ("We recognize that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Before filing this case, Class Counsel knew that Defendant Enterprise Holdings, Inc. would strenuously object to being named as a defendant in this matter because it was not Plaintiff's direct employer. Indeed, as discussed in Defendants' Motion to Dismiss, Defendants threatened to pursue

sanctions against Class Counsel on this basis (*See* Dkt. 26 at 1, n.1 ("Defendants reserve any remedies available under Rule 11 of the Federal Rules of Civil Procedure.")) While in Class Counsel's view Plaintiff's Complaint and FAC contained no inaccuracies, as discussed in Plaintiff's Motion for Preliminary Approval (Dkt. 106), it took extensive, contested discovery for Plaintiff and Class Counsel to fully develop a class certification theory leading to Defendants' agreement to consider a resolution on a class basis. (*See* Dkt. 62 (explaining the Parties' divergent views on the scope of any settlement negotiations and the need to resolve disagreements over class certification issues)). Defendants, of course, disagree and made clear that they would challenge any efforts by Plaintiff to move for class certification. Moreover, at the time this case was filed – and even when the Settlement was reached – several fundamental issues with respect to BIPA claims generally remained unresolved, including the issue of what limitations period applies to BIPA claims and when BIPA claims accrue for limitations purposes.

Class Counsel agreed to pursue this case understanding that a loss on any of these fronts would eliminate the Class's (and thus, Class Counsel's) ability to get paid. Considering these material risks, it is appropriate to award 33% of the Net Settlement Fund in attorneys' fees. *See Kolinek*, 311 F.R.D. at 502–03 (adding 6% risk premium to attorneys' fees "based on the degree of effort the attorneys would need to put in, the likelihood of success, and the risks associated with undertaking class representation" when case was filed); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d at 1035-35 (finding significant risk of nonpayment where, among other reasons, counsel would have to overcome case dispositive defenses and certify a class).

### 4. The benefits obtained for the Settlement Class Members further support a 33% fee award.

The quality of Class Counsel's representation, as demonstrated by the Settlement itself, further supports the requested fee award. As noted above, each Settlement Class Member who

does not request exclusion from the Settlement will receive hundreds of dollars by check without the need to submit a claim or take any action. This is an excellent result considering that many of the Settlement Class Members signed releases authorizing their direct employer to collect their biometric data and the other risks of non-payment discussed above. Irrespective of those risks specific to this case, the $706.25 gross recovery per class member compares favorably with other BIPA class settlements in employer timekeeping cases. *See, e.g., Cruz v. Jame Roll Form Products*, No. 21-CH-04132 (Cir. Ct. Cook Cnty., Ill. 2023) (finally-approved BIPA settlement created $538,125 fund for 1,025 class members, or $525 per class member gross); *Stiles v. Specialty Promotions, Inc.*, No. 20-CH-03766 (Cir. Ct. Cook Cnty., Ill. 2022) (finally-approved BIPA settlement created fund in the gross amount of $725 per class member); *Davis, et al., v. Heartland Employment Services, LLC,* No. 19-cv-00680, Dkt. 130 (N.D. Ill. Oct. 25, 2021) (Valderrama, J.) (approving BIPA employment class action settlement with a gross value of $500 per class member); *O'Sullivan v. WAM Holdings, Inc. et al.*, No. 19-CH-11575 (Cir. Ct. Cook Cnty., Ill. 2021) (finally-approved BIPA settlement created fund in the gross amount of $601 per class member); *Roach v. Walmart, Inc.,* No. 2019-CH-01107 (Cir. Ct. Cook Cnty., Ill. 2020) (approving BIPA employment class action settlement with a gross value of $461.32 per class member).

Ultimately, taken as a whole, the Settlement represents an outstanding result for the Settlement Class Members, given the heightened risks and strong legal defenses present here, and compared to awards in similar BIPA cases, Class Counsel's request for 33% of the Settlement Fund is reasonable and fair in this instance.

**B.  The Court Should Also Award Class Counsel's Requested Reimbursable Litigation Expenses.**

It is well established that counsel who create a common fund like this one are entitled to

the reimbursement of litigation costs and expenses. *Beesley v. Int'l Paper Co.*, 06-cv-703, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014) (citing Fed. R. Civ. P. 23; *Boeing*, 444 U.S. at 478. The Seventh Circuit has held that costs and expenses should be awarded based on the types of "expenses private clients in large class actions (auctions and otherwise) pay." *Synthroid I*, 264 F.3d at 722; *see also Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (noting that courts regularly award reimbursement of those expenses that are reasonable and necessarily incurred in the course of litigation). Reimbursable expenses include expert fees; travel; long distance and conference telephone; postage; delivery services; and computerized legal research. *See, e.g., In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) ("clear error" to deny reimbursement of Lexis and Westlaw expenses because "the arms' length market reimburses" such expenses); *Beesley*, 2014 WL 375432, *3 (granting reimbursement from common fund for litigation expenses including "expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses and mediation"); *City of Greenville v. Syngenta Crop Prot.*, Inc., 904 F. Supp. 2d 902, 910 (S.D. Ill. 2012) (granting reimbursement of expenses including "experts' fees, other consulting fees, deposition expenses, travel, and photocopying costs")

Class Counsel have expended $6,396.58 in reimbursable expenses related to filing fees, court reporter fees for several depositions, copying, and case administration. (Meyers Decl., ¶ 20). Courts regularly award reimbursement of the expenses counsel incurred in prosecuting the litigation. *See, e.g., Kaplan v. Houlihan Smith & Co.,* No. 12-cv-5134, 2014 WL 2808801, at *4 (N.D. Ill. June 20, 2014) (awarding expenses "for which a paying client would reimburse its lawyer"); *Spicer*, 844 F. Supp. at 1256 (N.D. Ill. 1993) (detailing and awarding expenses incurred during litigation). Therefore, Class Counsel request the Court approve as reasonable the incurred

expenses, a request which Defendant does not oppose. Accordingly, this Court should award a total fee and expense award to Class Counsel of $173,036.27.

### C. The Agreed-Upon Service Award For Plaintiff Is Reasonable And Should Be Approved.

The requested $12,500.00 Service Award for Plaintiff is reasonable not only because of her willingness to attach her name to this litigation against her former employer and thus subject herself to "scrutiny and attention" which is "certainly worth some remuneration," *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 601 (N.D. Ill. 2011), but also because of her extraordinary efforts on behalf of the Settlement Class. Plaintiff assisted Class Counsel with their initial investigation, produced documents in discovery (including her own personal text message communications), took multiple days off work in order to sit for *two* depositions, took another day off work in order to personally attend the settlement conference overseen by Hon. Gabriel Fuentes that led to the Settlement, and ultimately reviewed and approved the Settlement Agreement on behalf of the Settlement Class Members.

Because a named plaintiff is essential to any class action, "[i]ncentive awards are justified when necessary to induce individuals to become named representatives." *Spano v. Boeing Co.*, No. 06-cv-743, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016 (approving incentive awards of $25,000 and $10,000 for class representatives) (internal citation omitted). Here, Plaintiff's efforts and participation in prosecuting this case justify the $12,500.00 Service Award sought. Even though no award of any sort was promised to Plaintiff prior to the commencement of the litigation or any time thereafter, Plaintiff nonetheless contributed her time and effort in pursuing her own BIPA claims, as well as in serving as representative on behalf of the Settlement Class Members— exhibiting a willingness to participate and undertake the responsibilities and risks attendant with bringing a representative action. (Meyers Decl., ¶¶ 22–23). Were it not for Plaintiff's willingness

to bring this action on a class-wide basis, agreement to sacrifice her own time in order to fulfil her representative duties (and attend two depositions and a settlement conference), and her overall efforts and contributions to the litigation up through settlement, the substantial benefits to the Settlement Class Members afforded under the Settlement Agreement would not exist. (*Id.*, ¶ 24).

Numerous courts that have granted final approval in similar class action settlements, including BIPA settlements, have awarded the same or significantly higher incentive awards than the $12,500 award sought here. *See, e.g., Rapai v. Hyatt Corp.*, No. 17-CH-14483 (Cir. Ct. Cook County, Ill. 2022) (awarding $12,500 incentive award to BIPA class representative); *Rogers v. CSX Intermodal Terminal, Inc.*, No. 19-CH-04168 (Cir. Ct. Cook County, Ill. 2022) (awarding $15,000 incentive award in BIPA class action); *Craftwood Lumber Co. v. Interline Brands*, No. 11-cv-4462, 2015 WL 2147679, at *6 (N.D. Ill. 2015) (finding that $25,000 incentive award was reasonable and "in line with incentive fees awarded by other courts in this district"); *Murray et al v. Bill Me Later, Inc.*, No. 12-cv-04789, Dkt. 78 (N.D. Ill. 2014) (awarding $60,000 incentive award to two class representatives); *see also* Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1348 (2006) (finding that "[t]he average award per class representative was $15,992"). Accordingly, a Service Award of $12,500.00 to Plaintiff is eminently justified by her time and effort in this case and should be approved.

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiff and Class Counsel respectfully request that the Court enter an Order: (1) approving an award of attorneys' fees and expenses of $173,036.27; and (2) approving a Service Award in the amount of $12,500.00 to Plaintiff in recognition of her significant efforts on behalf of the Settlement Class Members.

Dated: March 20, 2023                    Respectfully submitted,

                                         DAWON WORDLAW, individually and on behalf
                                         of a class of similarly situated individuals

                                         By: /s/ Timothy P. Kingsbury
                                                *One of Plaintiff's Attorneys*

Myles McGuire
Evan M. Meyers
Timothy P. Kingsbury
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
tkingsbury@mcgpc.com
bduffner@mcgpc.com

*Counsel for Plaintiff and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 20, 2023, I electronically filed the foregoing *Plaintiff's Motion and Memorandum of Law in Support of Approval of Attorneys' Fees, Expenses, and Service Award* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ Timothy P. Kingsbury