**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAWON A. WORDLAW, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 20-cv-03200 |
| v. | Hon. Manish S. Shah |
| ENTERPRISE LEASING COMPANY OF CHICAGO, LLC; ENTERPRISE HOLDINGS, INC., | Hon. Magistrate Gabriel A. Fuentes |
| Defendants. | |

**PLAINTIFF'S *UNOPPOSED* MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Myles McGuire
Evan M. Meyers
Timothy P. Kingsbury
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
tkingsbury@mcgpc.com
bduffner@mcgpc.com

*Counsel for Plaintiff and the Settlement Class*

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... iii

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ........................................................................................................ 2

    A.    The Biometric Information Privacy Act. ........................................................ 2

    B.    Plaintiff's Claims. ............................................................................................ 3

    C.    Procedural History And Settlement Negotiations. ........................................ 3

III.    SETTLEMENT TERMS .......................................................................................... 5

    A. The Settlement Class. ........................................................................................ 5

    B. Monetary And Prospective Relief. ..................................................................... 6

    C. Release of Liability. ............................................................................................ 7

    D. Attorneys' Fees And Service Award. ................................................................. 7

IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL ................................... 8

    A. Class Notice Fully Satisfied Due Process ........................................................ 10

    B. Certification Of The Settlement Class Should Be Confirmed ........................... 11

    C. The Settlement Is Fair, Reasonable, Adequate And Should Be Approved. .................... 12

        1. Plaintiff And Class Counsel Have Adequately Represented The Settlement Class ........................................................................................... 12

        2. The Settlement Was Reached Only After Extensive Motion Practice, Discovery, And Arm's-Length Negotiation ................................... 14

        3. The Relief Provided By The Settlement Is Adequate And Warrants Final Approval ....................................................................... 16

            i. The relief provided by the Settlement is excellent ...................................... 16

            ii. The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval ........................................................... 17

            iii. The method of distributing relief to the Settlement Class Members is effective and supports final approval ............................................... 19

            iv. The requested Fee Award is reasonable .................................................. 19

        4. The Settlement Treats All Settlement Class Members Equally ........................ 20

    D. The Remaining Considerations Set Forth By The Seventh Circuit Support Approval Of The Settlement ........................................................................... 21

        1. The Reaction Of The Settlement Class Favors Approval ................................. 21

2. Class Counsel's Belief That The Settlement Is beneficial To The Settlement Class Members Weighs In Favor Of Final Approval .................................... 21

3. The Settlement Raises No Red Flags ................................................................ 22

V.    CONCLUSION ............................................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Aranda v. Caribbean Cruise Line, Inc.,*
No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400 (N.D. Ill. Mar. 2, 2017) ................................. 16

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) ................................................................................................ 8

*Bedford v. Lifespace Communities, Inc.,*
No. 20-cv-04574, (N.D. Ill. May 12, 2021) ............................................................................ 20

*Birchmeier v. Caribbean Cruise Line, Inc.,*
896 F.3d 792 (7th Cir. 2018) ................................................................................................ 7

*Cothron v. White Castle System, Inc.,*
Dkt. No. 128004 (argued on May 15, 2022) .......................................................................... 18

*Davis, et al., v. Heartland Employment Services, LLC,*
No. 19-cv-00680 (N.D. Ill. Oct. 25, 2021) ............................................................................ 16

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) .............................................................................................................. 10

*Eubank v. Pella Corp.,*
753 F.3d at 728 (7th Cir. 2014) ............................................................................................ 22

*Fournigault v. Independence One Mortgage Corp.,*
1234 F.R.D. 641 (N.D. Ill. 2006) .......................................................................................... 13

*Goldsmith v. Technology Solutions Co.,*
9 No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995). ........................... 14

*In re AT&T Mobility Wireless Data Services Sales Litig.,*
270 F.R.D. 330 (N.D. Ill. 2010) ............................................................................................ 17

*In re Southwest Airlines Voucher Litig.*
No. 11-cv-8176, 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Dec. 6, 2013) ......................... 2, 21

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) ................................................................................................ 8

*Ortiz v. Fibreboard Corp.,*
527 U.S. 815 (1999) .............................................................................................................. 20

*Quarles v. Pret A Manger (USA) Limited,*
No. 20-cv-07179, (N.D. Ill. May 4, 2022) ........................................................................ 16, 20

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP,*
No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ................................................ 21

*Roach v. Walmart, Inc.,*
No. 2019-CH-01107 (Cir. Ct. Cook Cnty., Ill. 2020) ............................................................. 17

*Rysewyk v. Sears Holdings Corp.,*
No. 15-cv-4519, 2019 U.S. Dist. LEXIS 236004 (N.D. Ill. Jan. 29, 2019) ............................. 12

*Schulte v. Fifth Third Bank*,
No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810 (N.D. Ill. Sept. 10, 2010) ........................ 15

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .......................................................... 10, 18, 21

*Sharrieff v. Raymond Mgmt. Co., Inc. d/b/a The Raymond Group*,
No. 18-CH-01496 (Cir. Ct. Cook Cnty., Ill. 2019) ................................................ 17

*Snyder v. Ocwen Loan Servicing, LLC*,
4 No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926 (N.D. Ill. May 14, 2019) ........................... 16

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*,
No. 02-cv-1109, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004) ................................. 20

*Tims v. Black Horse Carriers, Inc.*,
Dkt. No. 127801 (argued on September 22, 2022) ................................................ 18

*Williams, et al. v. PersonalizationMall.com, LLC*,
No. 20-cv-00025 (N.D. Ill., 2022) ................................................................ 16

*Wong v. Accretive Health, Inc.*,
773 F.3d 859, 863 (7th Cir. 2014) ........................................................ 12, 21

### Statutes and Rules

28 U.S.C. § 1715 .................................................................................. 11

Fed. R. Civ. P. 23 .......................................................................... *passim*

740 ILCS 14/1 *et seq.* ..................................................................... *passim*

### Miscellaneous Authority

*Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*,
*FED. TRADE COMM'N*, 11 (Sept. 2019) ......................................................... 19

Conte & Newberg, 4 *Newberg on Class Actions* (4th Ed. 2002) ........................... 8-9, 14

Federal Judicial Center,
Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide
2010, available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf ................... 10

*Manual for Complex Litigation* (4th ed. 2004) .............................................. 9

## I.   <u>INTRODUCTION</u>

Plaintiff Dawon A. Wordlaw respectfully requests that this Court grant final approval of the Parties' Class Action Settlement Agreement.[1] In this putative class action brought under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, Plaintiff alleges that Defendants Enterprise Leasing Company of Chicago, LLC and Enterprise Holdings, Inc. ("Defendants") collected, possessed, and disseminated individuals' fingerprints without complying with Sections 15(a), (b) and (d) of BIPA.

As set forth in Plaintiff's Motion for Preliminary Approval, the Parties have reached a proposed Settlement that establishes a non-reversionary Settlement Fund in the amount of $504,968.75 from which the Settlement Class Members will be compensated on an equal basis without having to submit claims or take any other action. On January 3, 2023, the Court granted preliminary approval of the Settlement, finding the settlement within the range of reasonableness such that the class should be given notice of the Settlement and an opportunity to object to the Settlement or opt out. (Dkts. 108-109.) Per the Court-approved Notice plan, direct individual Notice of the Settlement was disseminated via U.S. mail to the Settlement Class on February 7, 2023.[2] If the Settlement is granted final approval, Plaintiff estimates that each of the Settlement Class Members will receive between $400 and $500.[3]

---

[1] Unless otherwise stated, capitalized terms used herein have the same meaning as those terms are used in the Settlement Agreement, attached hereto as <u>Exhibit A</u>.

[2] Out of the 715 notices issued, only 35 have been deemed undeliverable. *See* Declaration of Johanna Olson of Settlement Administrator Analytics Consulting, LLC ("Olson Decl."), attached as <u>Exhibit B</u> ¶ 11.

[3] Plaintiff's estimate is based on a *pro rata* distribution of the Settlement Fund after deductions of $12,921 in settlement administration costs (Olson Decl. ¶ 14), $173,036.27 representing Class Counsel's requested Fee Award, and $12,500 representing the requested Service Award for Plaintiff (Dkt. 112 at 17.)

On March 20, 2023, Plaintiff filed her Motion and Memorandum of Law in Support of Approval of Attorneys' Fees, Expenses, and Service Award (Dkt. 112), which was then posted to the Settlement Website for class members to review. (Olson Decl. ¶ 8.) Importantly, no class member has objected to any portion of the Settlement. (*Id.* ¶ 13.) This complete absence of objections points to the reasonableness of the Settlement. *See In re Southwest Airlines Voucher Litig.,* No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" from the class "supports the reasonableness of the settlement"). In addition, only two Settlement Class Members have elected to exclude themselves from the settlement. (Olson Decl. ¶ 12.)[4]

As demonstrated below, the significant relief provided by the Settlement, along with its equitable and effective method of distribution, is an excellent result for the Settlement Class, particularly in view of the risks and delays involved in litigating the substantive merits of their claims. Accordingly, Plaintiff respectfully requests that the Court enter an Order: (i) finding that the Settlement is fair, reasonable, and adequate; (ii) granting final approval of the Settlement; and (iii) approving Plaintiff's requested attorneys' fees, reimbursement of litigation expenses, and Service Award.

## II.    BACKGROUND

### A.    The Biometric Information Privacy Act

BIPA is an Illinois statute enacted in 2008 that provides individuals with certain protections for their biometric information. To effectuate its purpose, BIPA requires private entities that seek

---

[4] Eight additional individuals also requested exclusion from the Settlement. However, the Settlement Administrator determined these individuals were not on the Class List because, based on Defendants' records, one of the individuals was not employed by Defendants, and the others had either not enrolled in or used the finger scan Kronos clock or were members of one of the Unions excluded from the class definition. (Olson Decl. ¶ 12.)

to use biometric identifiers (e.g., fingerprints and handprints) and biometric information (any information gathered from a biometric identifier which is used to identify an individual) to:

(1) inform the person whose biometrics are to be collected in writing that their biometrics will be collected or stored;

(2) inform the person whose biometrics are to be collected in writing of the specific purpose and the length of term for which such biometrics are being collected, stored and used;

(3) receive a written release from the person whose biometrics are to be collected allowing the capture and collection of their biometrics;

(4) receive consent before disclosing or otherwise disseminating the person's biometrics; and

(4) make publicly available retention schedule and guidelines for permanently destroying the collected biometrics.

740 ILCS 14/15. BIPA was enacted in large part to protect individuals' biometrics, provide them with a means of enforcing their statutory rights, and regulate the practice of collecting, using and disseminating such sensitive information.

**B.      Plaintiff's Claims**

Defendants are an international holdings company and one of its Illinois subsidiaries that rents cars. Plaintiff alleges that while she was working for Defendant Enterprise Leasing Company of Chicago, LLC in 2016, Defendants implemented a biometrically enabled timekeeping system to monitor Plaintiff's and the Settlement Class Members' work hours. (*See* First Amended Class Action Complaint ("Complaint" or "FAC"), Dkt. 21 ¶ 25.)

**C.      Procedural History And Settlement Negotiations**

Plaintiff initiated this lawsuit on April 3, 2020 in the Circuit Court of Cook County, Illinois, Chancery Division. On May 29, 2020, Defendant Enterprise Leasing Company of Chicago, LLC removed the case to this Court, where it was assigned to the Honorable Manish S. Shah. On August

31, 2020, Defendants moved to dismiss Plaintiff's initial Complaint. On September 21, 2020, Plaintiff filed the operative FAC. In the FAC, Plaintiff alleges that Defendants violated sections 15(a), (b), and (d) of BIPA through their implementation and operation of the biometrically-enabled timekeeping system. (*Id.* ¶ 37.)

On October 13, 2020, Defendants moved to dismiss Plaintiff's FAC under Fed. R. Civ. P. 12(b)(6), arguing that: (i) Plaintiff failed to allege facts supporting the inclusion of Enterprise Holdings, Inc. in this lawsuit; (ii) Plaintiff engaged in improper "group pleading;" (iii) Plaintiff failed to state any claim for violation of BIPA Sections 15(a), (b), or (d); (iv) Plaintiff failed to plead recklessness or intent; and (v) Plaintiff's claims were preempted by the Illinois Workers' Compensation Act. (Dkts. 25-26.) On December 21, 2020, following full briefing, the Court issued a Memorandum Opinion and Order denying Defendants' Motion to Dismiss. (Dkt. 30.) On January 20, 2021, Defendants filed a Motion for Reconsideration. (Dkts. 33-34.) Defendants simultaneously filed a Motion to Amend to Certify Questions for Appeal and Stay Proceedings. (Dkts. 35-36.) On January 28, 2021, the Court denied both motions. (Dkt. 38.)

On February 2, 2021, Defendants filed their Answer to Plaintiff's FAC, and on February 3, 2021, the Court entered a discovery schedule. (Dkts. 39-41.) Over the course of the next year, the Parties engaged in substantial merits and class discovery. Defendants produced thousands of documents, including hundreds of biometric consent forms signed by putative class members. (Dkt. 58.) Plaintiff took depositions of two individuals in their personal capacities as well as two depositions of Defendants' Rule 30(b)(6) designees, and Defendants took two depositions of Plaintiff. While the Parties met and conferred regularly in an attempt to resolve numerous disputes, Plaintiff filed a Motion to Compel (Dkt. 56) and Defendants filed a Motion to Quash Plaintiff's subpoena to Kronos Incorporated, the provider of the timekeeping technology at issue in this case.

(Dkt. 66.) At the Parties' request, the Court extended the fact discovery cutoff several times. (Dkts. 51, 58, 60, 65, 77.) Fact discovery closed on April 29, 2022. (Dkt. 77.)

On May 23, 2022, the Parties requested a referral to Magistrate Judge Gabriel A. Fuentes for a settlement conference. (Dkt. 85.) On July 13, 2022, the Parties attended an all-day remote settlement conference with Judge Fuentes. (Dkt. 92.) With the assistance of Judge Fuentes, the Parties reached a settlement in principle by which the Parties agreed to resolve all matters pertaining to, arising from, and associated with the Litigation, including all claims Plaintiff and Settlement Class Members have or may have had against Defendants and any Released Parties, as those terms are defined in the Settlement Agreement. (*Id.*) In the months following the formal settlement conference, the Parties engaged in further negotiations to come to terms regarding the key elements of the Settlement, including the relief to be provided to the Class Members, the scope of the release, and the form and method of Notice to be provided to the Settlement Class Members. These negotiations culminated in the fully executed Settlement Agreement which this Court preliminarily approved on January 3, 2023. Plaintiff now seeks final approval of the Settlement.

## III.   SETTLEMENT TERMS

### A.    The Settlement Class

In granting preliminary approval, the Court conditionally certified a Settlement Class defined as follows:

> All individuals who scanned their finger for timekeeping purposes while working for Enterprise Leasing Company of Chicago, LLC or Enterprise Rent-A-Car Company – Midwest, LLC within the state of Illinois at any time between April 3, 2015 and the date of Preliminary Approval, and who (i) did not first execute a written release of claims prior to the date of Preliminary Approval, or (ii) were not represented by the Unions during their employment.[5]

---

[5] "Unions" means the Automobile Mechanics Unions Local 701, IAM & AW and the Miscellaneous Warehousemen, Airline, Automotive Parts, Service, Tire & Rental, Chemical & Petroleum, Ice, Paper and Related Clerical & Production Employees Union, Local No. 781, Affiliated with the International Brotherhood of Teamsters, Chicago and Vicinity, Illinois. (Ex. A ¶ 43.)

(Ex. A ¶ 47.) As noted above, each of the 715 Settlement Class Members were sent direct notice of the Settlement. (Olson Decl. ¶ 7.)

### B.     Monetary And Prospective Relief

As part of the Settlement, Defendants have agreed to establish a non-reversionary Settlement Fund in the amount of $504,968.75. (Ex. A ¶ 50(a).) Defendants have represented, and the Parties agree, based on Defendants' records, that the Settlement Class consists of 715 individuals. (*Id.*) Following entry of the Court's Order granting preliminary approval of the Settlement, Defendants created a Class List consisting of the full names and last known mailing addresses of 715 individuals, based on Defendants' records. (Ex. A ¶ 66; Olson Decl. ¶ 4.) The Settlement Fund will be distributed directly to Settlement Class Members on a *pro rata* basis after deductions for the costs of settlement administration, a Fee Award, and a Service Award to Plaintiff. (Ex. A ¶ 50(b).) Settlement Class Members do not need to submit a claim in order to receive their monetary award under the Settlement.

Checks sent to Settlement Class members shall remain valid and negotiable for ninety (90) days from the date of their issuance and will thereafter become void if not cashed within that time period. (*Id.* ¶ 54.) Within fourteen (14) days of the expiration of the ninety-day period, the Settlement Administrator shall redistribute such uncashed funds evenly amongst Settlement Class members who cashed their initial check. (*Id.*) This second round of checks shall again be valid and negotiable for ninety (90) days from the date of their issuance. (*Id.*) Any funds remaining uncashed after the second distribution shall be distributed to a *cy pres* recipient(s) selected by the Parties and approved by the Court. (*Id.*) The Settlement also requires Defendant Enterprise Chicago to provide certain prospective, non-monetary relief. (*Id.* ¶ 55.)

### C.     Release of Liability

In exchange for the monetary and prospective relief described above, each Settlement Class Member who did not exclude themselves from the Settlement will be deemed to have released and forever discharged Defendants and the other "Released Parties" (e.g. Defendants' affiliates and related entities) from any "Released Claims" that, as defined more thoroughly in the Settlement Agreement, include claims which relate to the claims in this Litigation or could have been brought in this Litigation. (*Id.* ¶ 36.) Plaintiff, in her individual capacity, has also granted the Released Parties a general release of all claims germane to her. (*Id.* ¶ 37.)

### D.     Attorneys' Fees And Service Award

The Agreement provided for Plaintiff to petition the Court for a Service Award. (*Id.* § XVI.) There is no clear sailing provision as to this request and neither Court approval nor the amount of the Service Award is a condition of the Settlement. (*Id.*) Given Plaintiff's significant role in prosecuting this action on behalf of the Settlement Class, which includes agreeing to serve as the putative class representative, reviewing the pleadings filed on her behalf, participating in written discovery, producing documents to Defendants, being deposed *twice*, attending the settlement conference, reviewing the Settlement Agreement, and otherwise making herself available to Plaintiff's Counsel from this case's inception, Plaintiff has requested a Service Award of $12,500.00. (Dkt. 112 at 1.) The direct notice advised the Settlement Class Members of Plaintiff's request and there was no objection to it. (Dkt. 106-1 at Ex. B.)

Also per the Agreement, Class Counsel have petitioned the Court for an award of attorneys' fees and costs. (Ex. A § XVI; Dkt. 112.) As addressed in Class Counsel's motion for approval of attorneys' fees, in common fund class settlements such as this, courts in this District often award in excess of the 33% of the settlement fund sought here. *See Birchmeier v. Caribbean Cruise Line,*

*Inc.*, 896 F.3d 792, 796-97 (7th Cir. 2018) (affirming attorney fees in TCPA class action of 36% of the first $10 million, 30% of the next $10 million, and 24% of the next $34 million). This amount is appropriate to compensate Class Counsel here for the work they have performed in achieving the Settlement for the Settlement Class, as well as the work remaining to be performed in overseeing the full implementation and administration of the Settlement and assisting Settlement Class Members. There was no clear sailing agreement with respect to the Fee Award. Further, the Notice informed the Settlement Class Members that Class Counsel would seek up to 33% of the fund net administration costs. (Olson Decl. at Ex. 1.)

There were no objections from the Settlement Class Members to either the requested Service Award or the requested Fee Award. (Olson Decl. ¶ 13.)

## IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL.

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998); see also *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); Herbert B. Newberg & Alba Conte, 4

8

Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). The alternative means for handling claims like those at issue here – individual litigation – would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* § 21.63 (4th ed. 2004) describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentators, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 Newberg § 11.25. Following entry of the Court's Preliminary Approval Order, the first two steps in this process have occurred. With this motion, Plaintiff respectfully requests that the Court take the third and final step and grant final approval of the Settlement. Final approval of a class action settlement requires adherence to due process and is further governed by Federal Rules of Civil Procedure 23(a) and 23(b)(3), and 23(e)(2). As explained below, each prerequisite for final approval is satisfied here.

### A. The Class Notice Fully Satisfied Due Process.

Prior to granting final approval to this Settlement, the Court must consider whether the class members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011). The "best notice practicable" does not necessarily require receipt of actual notice by all class members in order to comport with both Rule 23 and the requirements of due process. In general, a notice plan that reaches at least 70% of class members is considered reasonable. See Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

Here, after preliminary approval, Defendants and the Settlement Administrator compiled the full names and mailing addresses of the Settlement Class members ("Class List"), following the detailed procedures set forth in the Settlement Agreement. (Ex. A ¶ 66.) The Court-approved Notice plan called for direct notice via First-Class U.S. Mail to all persons in the Settlement Class for whom a valid mailing address was available and the creation of a Settlement Website. (Ex. A ¶ 67.) Prior to issuing direct notice, the Settlement Administrator first updated the U.S. Mail addresses on the Class List through the National Change of Address database to as many up-to-date addresses as possible. (Olson Decl. ¶ 5.) On February 7, 2023, the Settlement Administrator sent the Court-approved direct notice via U.S. Mail to all 715 addresses on the Class List. (*Id.* ¶ 4.) For the eight Settlement Class Members whose Notices were returned as undeliverable with a forwarding address, the Settlement Administrator promptly re-mailed the Notice using the forwarding address. (*Id.* ¶ 10.) For the sixty-six Settlement Class Members whose Notices were

returned as undeliverable without a forwarding address, the Settlement Administrator conducted a firm level skip trace and re-sent the Notice to the address (if any) determined by the skip trace. (*Id.* ¶ 11.) Of the sixty-six Notices that were initially returned as undeliverable, the Settlement Administrator was able to determine an address via skip trace for thirty-one Settlement Class Members. (*Id.*) Overall, the Notice plan was highly successful, as notice was delivered to 680 Settlement Class Members' mailing addresses such that, in total, direct notice successfully reached 95% of the Settlement Class. (*Id.*) Moreover, Settlement Class Members stand to receive monetary compensation under the Settlement via direct checks rather than being required to submit a claim. (Ex. A ¶ 50(b).) This greatly exceeds what is required for due process. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010).

The Notice directed class members to the Settlement Website, www.carrentalBIPASettlement.com, which has been and continues to be available 24/7 and features the "long form" notice and important court filings (including Plaintiff's Motion and Memorandum of Law in Support of Approval of Attorneys' Fees, Expenses, and Service Award), important deadlines, instructions on how to appear at the Final Approval Hearing, and answers to frequently asked questions. (Olson Decl. ¶ 8; Ex. A ¶ 42.) In addition, on January 9, 2023, the Settlement Administrator sent the required notice to the appropriate government entities pursuant to the Class Action Fairness Act, 28 U.S.C § 1715(b). (Olson Decl. ¶ 6.)

Accordingly, the Settlement's Notice plan has satisfied all due process concerns and thus weighs in favor of granting final approval.

**B.     Certification Of The Settlement Class Should Be Confirmed.**

In its Order granting preliminary approval, the Court found that the prerequisites for maintaining a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3) had been

preliminarily satisfied. (Dkt. 109 ¶ 4.) Specifically, the Court found that the Settlement Class is sufficiently numerous, that common questions predominate, that Plaintiff's claims are typical of the Settlement Class's claims, that Plaintiff and Class Counsel will adequately represent the Settlement Class, and that a class action is a superior method for fairly and efficiently adjudicating this matter. (*Id.*) Because nothing has changed since the entry of the Court's Preliminary Approval Order – other than Defendant producing the Class List and the Settlement Administrator successfully providing direct notice to 95% of the Settlement Class Members – the Court should confirm certification of the Settlement Class for purposes of entering a Final Approval Order.

### C.     The Settlement Is Fair, Reasonable, Adequate And Should Be Approved.

When deciding whether to grant final approval of a proposed settlement, Rule 23(e)(2) directs courts to consider whether: (1) the named plaintiff and class counsel have adequately represented the class; (2) the settlement resulted from arm's-length negotiations; (3) the settlement treats class members equally; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *Rysewyk v. Sears Holdings Corp.*, No. 15-cv-4519, 2019 U.S. Dist. LEXIS 236004, at *11-12 (N.D. Ill. Jan. 29, 2019) (Shah, J.).[6] Each of these factors supports approval of the instant Settlement.

#### 1.     Plaintiff And Class Counsel Have Adequately Represented The Settlement Class.

The first Rule 23(e)(2) factor analyzes whether the named plaintiff and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(4). This requirement is satisfied where

---

[6] The factors to be considered under the 2018 amendment to Rule 23 "overlap with the factors articulated by the Seventh Circuit, which include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Rysewyk*, 2019 U.S. Dist. LEXIS 236004, at *12 (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)).

the named plaintiff: (1) possesses an interest in the outcome of the case sufficient to ensure vigorous advocacy; (2) has no interest antagonistic to the class'; and (2) has retained qualified and competent counsel. *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006).

The first prong of the adequacy analysis is satisfied here. Plaintiff's interests in this case are aligned with, and not antagonistic to, those of the Settlement Class she seeks to represent. Plaintiff and the other Settlement Class Members all share identical claims arising from a common course of conduct: Defendants' allegedly unlawful collection, retention, and dissemination of their biometric data. To vindicate those claims, Plaintiff has vigorously prosecuted this action on behalf of the Settlement Class by retaining counsel, agreeing to serve as the putative class representative, reviewing the pleadings filed on her behalf, participating in written discovery, producing documents to Defendants, being deposed twice, attending the settlement conference, reviewing the Settlement Agreement prior to signing it, and otherwise making herself available to Class Counsel from this case's inception. (*See* Declaration of Evan M. Meyers ("Meyers Decl.") attached hereto as Exhibit C ¶ 14.)

The second prong of the adequacy analysis is also satisfied because Class Counsel have extensive experience in complex litigation and consumer class actions involving statutory privacy claims such as BIPA and have been found adequate and appointed class counsel in scores of cases arising under BIPA and various other consumer privacy statutes in this Court and in state and federal courts throughout the country. (*Id.* ¶¶ 5-6.) Drawing on this experience, Class Counsel were able to effectively evaluate the merits of this case, Defendants' defenses, the benefits of the proposed Settlement, and the attendant risks of litigation. Further, Class Counsel have vigorously pursued the class claims from the outset, from investigating Plaintiff's claims, drafting and filing

the initial complaint and the FAC, briefing and defeating Defendants' Motion to Dismiss, taking discovery regarding merits and class certification issues including taking and defending several depositions, litigating multiple discovery disputes and participating in a formal mediation on behalf of Plaintiff and the Settlement Class Members. (*Id.* ¶¶ 11-14.) These efforts culminated in a non-reversionary Settlement Fund that provides all Settlement Class Members with significant cash relief without the need to submit a claim form or other paperwork. As such, the Court should find the adequacy of representation prong met.

2.   The Settlement Was Reached Only After Extensive Motion Practice, Discovery, And Arm's-Length Negotiation.

The second Rule 23(e)(2) factor focuses on whether the Settlement was "negotiated at arm's length." There is usually a presumption of fairness when a proposed class settlement "is the product of arm's-length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." 4 Newberg § 11.41; *Goldsmith v. Technology Solutions Co.,* No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995). In determining whether this factor is satisfied, the Court may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note.

Here, the Parties engaged in fact discovery for over a year, requiring several joint requests for extensions of discovery deadlines, before agreeing to explore resolution on a class basis. (Dkts. 51, 58, 60, 65, 77.) The Parties responded to written discovery requests, produced substantial documents, and conducted extensive oral and written discovery, including two depositions of Enterprise subsidiary employees in their personal capacities, two depositions of Defendants' Rule 30(b)(6) designees, and two depositions of Plaintiff. (Meyers Decl. ¶ 14.) Despite meeting and

conferring frequently on various discovery issues, the Parties were unable to resolve several disputes amicably, leading to a Motion to Compel filed by Plaintiff and a Motion to Quash filed by Defendants. Plaintiff also conducted third-party discovery, including issuing subpoenas to an Enterprise subsidiary not named as a defendant in this matter as well as to Kronos Incorporated, the vendor that provided the timekeeping technology at issue in this case. Accordingly, Plaintiff and Class Counsel had sufficient information about the facts of the Litigation to fairly weigh their prospects of success at trial versus the negotiated outcome provided by the Settlement such that the Court should find that they adequately represented the Class.

Indeed, it was not until the close of fact discovery that the Parties agreed to discuss the prospect of a classwide resolution. To that end, the Parties sought a settlement conference referral to Judge Fuentes. (Dkt. 85.) On July 13, 2022, Counsel for the Parties, Plaintiff, and Defendants' corporate representatives attended a settlement conference with Judge Fuentes, where the Parties reached an agreement in principle to resolve the Litigation on a classwide basis. For the next several months, the Parties continued to negotiate the contours of the instant Settlement, including the appropriate relief to be provided to the Class Members, as well as the scope of the release and details about the Notice to be provided to the Settlement Class Members. This formal, arm's-length process underscores the fairness of the Settlement and the lack of any collusion between the Parties. *See* Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.")

For all these reasons, the Court should find the Settlement here was the result of good-faith, arm's-length negotiations. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 U.S. Dist. LEXIS 144810, at *15-16 n.5, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the

absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered"); *Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2019 U.S. Dist. LEXIS 80926, at *15 (N.D. Ill. May 14, 2019) (granting preliminary approval where agreement had "no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"); *Aranda v. Caribbean Cruise Line, Inc.,* No. 12 C 4069, 2017 U.S. Dist. LEXIS 29400, at *14 (N.D. Ill. Mar. 2, 2017) (same).

3. <u>The Relief Provided By The Settlement Is Adequate And Warrants Final Approval.</u>

i. *The relief provided by the Settlement is excellent.*

The Settlement in this case is an excellent result for the Settlement Class Members and provides significant monetary benefits to the Settlement Class, as every Settlement Class Member will receive an equal payment from a Settlement Fund totaling $504,968.75, less Court-approved fees and expenses. As such, Settlement Class Members can expect to receive several hundred dollars from the Settlement Fund, likely between $400-500.

The Court need not rule on a blank slate as to the reasonableness of the Settlement. Similar class action settlements involving alleged violations of BIPA have received final approval in this District and elsewhere, including from this Court. *See, e.g.*, *Davis, et al., v. Heartland Employment Services, LLC,* No. 19-cv-00680, Dkt. 130 (N.D. Ill. Oct. 25, 2021) (Valderrama, J.) (approving BIPA employment class action settlement with a gross payment of $500 per class member); *Williams, et al. v. PersonalizationMall.com, LLC,* No. 20-cv-00025 Dkt. 103 (N.D. Ill., 2022) (Durkin, J.) (approving BIPA timekeeping class action settlement with a gross recovery of $220 per class member); *Jones,* No. 19-cv-06736, Dkt. 53 (N.D. Ill., 2020) (Alonso, J.) (approving BIPA timekeeping class action settlement with a gross payment of $800 per class member); *Quarles,* No.

16

20-cv-7179, Dkt. 53 (N.D. Ill., 2022) (Shah, J.) (finally-approved BIPA class settlement resulted in gross recovery of $850 per class member); *Roach v. Walmart, Inc.,* No. 2019-CH-01107 (Cir. Ct. Cook Cnty., Ill. 2020) (approving BIPA employment class action settlement with a gross recovery of $461 per class member); *Sharrieff v. Raymond Mgmt. Co., Inc. d/b/a The Raymond Group,* No. 18-CH-01496 (Cir. Ct. Cook Cnty., Ill. 2019) (approving BIPA employment class action settlement with a gross recovery of $517 per class member).

Here, from a gross fund perspective, each Settlement Class Member will receive a settlement payment of $706.25, which is well within the range of similar BIPA settlements. After deductions for settlement administration expenses, any Fee Award, and any Service Award, Settlement Class Members who do not exclude themselves will likely receive between $400 and $500, which is fair, reasonable, and adequate, and warrants the Court's final approval.[7]

> ii. *The cost, risk, and delay of further litigation compared to the Settlement's benefits favors final approval.*

While Plaintiff believes her BIPA claims against Defendants are strong, she is also aware that Defendants have denied her allegations and raised numerous legal defenses, many of which, if successful, could result in Plaintiff and the proposed Settlement Class Members receiving no payment whatsoever. Moreover, Defendants have made clear that they would challenge any effort by Plaintiff to move for class certification. Furthermore, the state of the law with respect to BIPA violations has been evolving throughout the Litigation—and is still evolving. Indeed, at the time that the Settlement was reached, two major decisions by the Illinois Supreme Court were forthcoming with respect to which statute of limitations applies to BIPA claims, as well as when

---

[7] Because every settlement is a compromise, courts should not reject a settlement solely because it does not provide a complete victory. Parties to a settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T*, 270 F.R.D. at 347 (internal quotations and citations omitted).

BIPA claims accrue. *See Tims v. Black Horse Carriers, Inc.* (argued on September 22, 2022); *Cothron v. White Castle System, Inc.* (argued on May 15, 2022). A defendant-friendly holding in either pending appeal could have resulted in Settlement Class Members receiving no compensation. Indeed, a petition for re-hearing has been filed and is pending in *Cothron.*

Taking these realities into account, and recognizing the risks involved in any litigation, the relief afforded by the Settlement represents an excellent result for the Settlement Class Members. The total amount of the Settlement Fund and the direct payments to Settlement Class Members are significant in light of the risks of ongoing Litigation. If Defendants were to succeed on their defenses to liability against Plaintiff's individual claims, or otherwise prevail in opposing class certification, the Settlement Class Members would recover nothing.

Furthermore, any trial in this matter would likely be complex and expensive. In addition, any trial in this matter would not likely take place for at least another year. Prior to the Parties' settlement conference, the Parties were on the verge of briefing Plaintiff's Motion for Leave to Issue Subpoena (Dkts. 79-80), expert discovery had yet to occur, and Plaintiff's motion for class certification and the Parties' summary judgment motions had not yet been filed. Even in the event that the Litigation reached trial, evidence and witnesses from several states would have to be assembled and organized. Given the complexity of the issues and the amount in controversy, the losing party would likely appeal both the decision(s) on the merits (at summary judgment and/or trial), as well as the decision(s) on class certification.

As such, the immediate relief provided to the Settlement Class under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of continued litigation, trial, and appeal. Indeed, "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *See Schulte v. Fifth Third*

*Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted). With this Settlement, Plaintiff and the Settlement Class Members will receive meaningful payments and other relief now, instead of years from now—or perhaps never. *See id.* at 582. In short, in the absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation that would result would be substantial.

> iii. *The method of distributing relief to the Settlement Class Members is effective and supports final approval.*

As detailed above, the Parties disseminated an effective form and method of Notice that made sure that Class Members receive direct notice informing them about the Settlement. *See supra* Section IV(A); Fed. R. Civ. P. 23(e)(2)(C)(ii). As discussed above, the manner and method of distributing Notice more than satisfied the requirements of Due Process and Rule 23 because 95% of Settlement Class Members received direct notice of the Settlement. (Olson Decl. ¶¶ 7-11.) Where other class action settlements require Settlement Class Members to submit claims in order to receive compensation, the Settlement here requires Settlement Class Members to do nothing to receive a substantial check. *See Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, FED. TRADE COMM'N,* 11 (Sept. 2019) ("Across all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%."). The "direct check" method utilized here is far more efficient than a traditional claims process and will result in many more Settlement Class Members receiving compensation than likely otherwise would. Accordingly, this factor weighs in favor of granting final approval.

> iv. *The requested Fee Award is reasonable.*

Class Counsel's attorneys' fee request – which amounts to 33% of the Settlement Fund – falls well within the range of attorney's fees awarded in other similar settlements. The request is

reasonable in light of the recovery achieved for the Settlement Class Members and the efforts undertaken by Plaintiff's Counsel in pursuing these claims on behalf of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(iii), *see also Bedford,* No. 20-cv-04574, Dkt. 32 (N.D. Ill. May 12, 2021) (Shah, J.) (approving class counsel's fee request for 33.3% of the settlement fund in BIPA class settlement); *Quarles v. Pret A Manger (USA) Limited*, No. 20-cv-07179, Dkt. 53 (N.D. Ill. May 4, 2022) (Shah, J.) (approving class counsel fee request for 36% of the settlement fund in BIPA class settlement); *Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.,* No. 02-cv-1109, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action is not uncommon"). Moreover, no Settlement Class Members have objected to Class Counsel's requested Fee Award. Plaintiff has also identified all agreements made in connection with the Settlement, which are solely limited to the terms contained in the Settlement Agreement. Fed. R. Civ. P. 23(e)(2)(C)(iv).

### 4.    The Settlement Treats All Settlement Class Members Equally.

The final Rule 23(e)(2) subpart supports approval where the proposed settlement treats all class members the same. Fed. R. Civ. P. 23(e)(2)(D). Here, each Settlement Class Member has identical BIPA claims against Defendants, which is why they have received and will continue to receive identical treatment under the proposed Settlement. Specifically, the Settlement provides every Settlement Class Member with identical notice and an equal, *pro rata* share of the Settlement Fund. Because each Settlement Class Member will receive an equal share of the Settlement Fund, the proposed Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(2)(D). *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata

distribution of the limited fund"). Because there is no disparate treatment between members, this factor is also satisfied.

**D.      The Remaining Considerations Set Forth By The Seventh Circuit Support Approval Of The Settlement.**

In addition to the requirements that overlap with those now required by Rule 23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the settlement, the opinion of competent counsel, and whether the settlement raises any red flags that courts should be wary of. *Wong*, 773 F.3d at 863. Here, each additional consideration weighs in favor of granting final approval.

**1.      The Reaction Of The Settlement Class Favors Approval.**

The Court-approved Settlement Administrator diligently implemented the Notice plan set forth in the Settlement Agreement, and the objection and exclusion deadlines have passed *without a single person* objecting to the Settlement, and only two Settlement Class Members have elected to exclude themselves from the Settlement. (Olson Decl. ¶ 12.)[8] The complete lack of objections and minimal opt outs strongly support granting final approval of the Settlement. See *In re Southwest,* 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" "supports the reasonableness of the settlement.")

**2.      Class Counsel's Belief That The Settlement Is In The Best Interests Of The Settlement Class Members Weighs In Favor Of Final Approval.**

Where class counsel has "extensive experience in consumer class actions and complex litigation[,]" their "belie[f] that the [s]ettlement is beneficial to the [c]lass" supports approval of the settlement. *Schulte*, 805 F. Supp. 2d at 586; see also *Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (finding

---

[8] As set forth above, while eight other individuals also submitted requests for exclusion, the Settlement Administrator has determined that such individuals are not Settlement Class Members (Olson Decl. ¶ 12.)

plaintiff's counsel competent, and their endorsement of a settlement thus supporting approval, where counsel were "experienced and skilled practitioners in the [relevant] field, and [were] responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted") (internal quotations omitted). As discussed at length in Plaintiff's Motion for Preliminary Approval, Class Counsel are highly experienced in the field of BIPA class litigation and are competent to give their opinion on this Settlement. (Dkt. 106 at 22.) Put simply, and for the reasons discussed above, Class Counsel believe that the Settlement provides outstanding monetary and prospective relief without the uncertainty and delay that years of additional litigation would bring. (Meyers Decl. ¶¶ 13-14.) That is certainly in the best interest of the Settlement Class. (*Id*.) This factor thus weighs in favor of final approval.

### 3.     The Settlement Raises No Red Flags.

Finally, the Settlement raises none of the red flags identified by the Seventh Circuit in analyzing class settlements. In *Eubank v. Pella Corp.,* the Seventh Circuit identified "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for[.]" 753 F.3d at 728 (7th Cir. 2014). Those signs included (i) a single class containing two adverse subgroups, (ii) a familial relationship between class counsel and the class representative, (iii) failure to establish the amount of class member recovery, (iv) the reversion of any unawarded attorneys' fees to defendant, (v) an advance of attorneys' fees before notice of the settlement was provided to class members, (vi) a provision in the settlement agreement denying incentive awards to class representatives who objected to the settlement, (vii) providing some class members only coupons, and (viii) a complicated claims procedure creating substantial obstacles to recovery. *Id*. at 721-28.

Here, none of those red flags are present. There are no subgroups to the Settlement Class, and the Class Representative, Ms. Wordlaw, has no familial or other relationship with Class Counsel or any member of their law firm. The Notice here is simple and straightforward: Class Members received direct notice via U.S. mail and will receive payment under the Settlement in the same way as there is no claims process. The Settlement Fund will be distributed to Class Members on a *pro rata* basis, and no amount will revert to Defendants (Ex. A ¶ 50.) There has also been no advance of attorneys' fees to Class Counsel, and there is no provision in the Settlement Agreement denying an incentive award to a named plaintiff who does not support the Settlement. Altogether, the Settlement here is beneficial to Class Members and displays no warning signs that should give this Court pause. The Settlement should therefore be finally approved.

## V.    **CONCLUSION**

For the foregoing reasons and the reasons set forth in Plaintiff' Motion and Memorandum of Law in Support of Approval of Attorneys' Fees, Expenses, and Service Award (Dkt. 112), Plaintiff respectfully requests that the Court enter an Order: (i) finding that the Settlement is fair, reasonable, and adequate; (ii) granting final approval of the Settlement; (iii) approving Class Counsel's requested Fee Award; (iv) approving Plaintiff's requested Service Award; and (v) providing such other and further relief as the Court deems reasonable and just.

Dated: April 24, 2023          Respectfully submitted,

DAWON WORDLAW, individually and on behalf of a class of similarly situated individuals

By: /s/        *Brendan Duffner*
         *One of Plaintiff's Attorneys*

Myles McGuire
Evan M. Meyers
Timothy P. Kingsbury
Brendan Duffner
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
tkingsbury@mcgpc.com
bduffner@mcgpc.com

*Counsel for Plaintiff and Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2023, I electronically filed the foregoing *Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ *Brendan Duffner*